**Ross MIDDLEMIST, Wayne W. Maughan, Flathead Joint Board of Control, Plaintiffs,**

v.

**SECRETARY OF the UNITED STATES DEPARTMENT OF INTERIOR, Manuel Lujan, Jr., et al., Defendants.**

**No. CV 91–155–M–CCL.**

United States District Court, D. Montana, Missoula Division.

Feb. 12, 1993.

Jon Metropoulos, Browning, Kaleczyc, Berry & Hoven, Helena, MT, for plaintiffs.

John B. Carter, Tribal Legal Dept., Pablo, MT, Vernon Peterson, Portland Area Office, U.S. Dept. of Interior, Portland, OR and James M. Upton, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for defendants.

## OPINION AND ORDER

LOVELL, District Judge.

The Joint Board of Control (JBC) and two individuals have filed this action against the officials of the Department of Interior and individual officials of the Confederated Salish and Kootenai Tribes (Tribes) alleging that the Tribes have no authority to exercise regulatory jurisdiction over activities of non-

members on the Flathead Reservation on "fee" lands. Plaintiffs seek declaratory and injunctive relief barring the Tribal government from applying Tribal Ordinance 87A, the Aquatic Lands Conservation Ordinance (ALCO), against the Plaintiffs anywhere and under any circumstances. Plaintiffs are also suing the United States for its role in approving ALCO and for allegedly providing funding to develop, implement and enforce the Ordinance. Against the Federal Defendants, Plaintiffs seek relief in the nature of mandamus requiring the disapproval of the Ordinance as it applies to nonmember activity.

Tribal Defendants and Federal Defendants have each moved to dismiss the action. Tribal Defendants argue that the court lacks personal jurisdiction over the Tribal governmental officials named in the suit because of the Tribes' sovereign immunity; that Plaintiffs lack standing and capacity to sue; and that Plaintiffs have failed to exhaust Tribal remedies.

The Federal Defendants move to dismiss on the grounds that the Tribes are a necessary and indispensable party to this action and that the actions of the Federal Defendants are protected by sovereign immunity. Federal Defendants also assert that Tribal remedies have not been exhausted.

## FACTUAL BACKGROUND

ALCO is a civil regulatory ordinance designed to effectuate the Tribal and federal goals of protecting the quality of Reservation aquatic habitat. The Tribal Council approved ALCO on December 13, 1985. The Secretary of Interior approved ALCO in accordance with the provisions of the Tribal Constitution on December 20, 1985. The Tribes proposed regulations to implement ALCO and published legal notice of the proposed regulations for public comment. The regulations were adopted pursuant to the Tribal Administrative Procedures Ordinance after a comment period. Neither the JBC nor the individual Plaintiffs sought to challenge the regulations during this notice and comment period.

Plaintiff Ross Middlemist is an irrigator served by the Flathead Irrigation and Power Project (FIPP) and is a constituent and member of the Joint Board of Control. His property lies within the exterior boundaries of the Reservation. Mr. Middlemist intended to engage in a project to improve a natural spring site on his property which he uses to supply a stockwater tank. On September 17, 1991, Middlemist went to the Agricultural Stabilization and Conservation Service (ASCS) in Sanders County and applied for funding for his project which was approved in the amount of $1,050. In October of 1991, Middlemist was informed by the ASCS that in addition to applying for permits for the project from the Army Corps of Engineers and the Montana Department of Fish, Wildlife, and Parks, he would have to apply for a permit from the Tribal Shoreline Protection Office pursuant to the terms of ALCO. Middlemist never applied for such a permit and, therefore, has never paid a filing fee nor been rejected by the Tribal agency. He has not done any construction on his improvement project.

Plaintiff Wayne Maughan also holds fee simple title to property within the exterior boundaries of the Reservation. He is also an irrigator served by FIPP and represented by the JBC. Mr. Maughan has an impoundment reservoir on his property which is fed by Maughan Creek. The dam on Maughan's property requires improvement for safety, water quality reasons, and to expand the capacity of the reservoir.

In their complaint, Plaintiffs allege that the improvement of this dam will improve the quality of the water flowing downstream by allowing greater storage and settling of runoff and irrigation return flows. Additionally, it is believed that the improvement project will result in more water available for upstream irrigators by requiring less to be delivered to Maughan.

To facilitate this project, the JBC passed a resolution on November 13, 1990 and set aside a grant of $3,000 to help pay for the project asserting that the project will benefit the JBC and its constituents. The JBC retained an engineering firm to design and draft plans for the improvement of the dam. Plaintiffs Maughan and the JBC then began

the process of applying for state and federal permits and approvals. They did not apply for a permit from the Tribal Shoreline Protection Office, paid no fees, and were not denied a permit by that agency.

Plaintiffs generally assert that the Tribes do not have authority over non-members and that the exercise of Tribal jurisdiction over them is violative of their constitutional rights. Plaintiffs list these rights as the right to vote and hold office in the government under which they live; the right to sit on a jury; the right to be judged by a jury of their peers; and the right to a jury trial in a civil matter.

## DISCUSSION: EXHAUSTION OF TRIBAL REMEDIES

Though Defendants have stated various grounds in support of their motions to dismiss, the court finds that the issue of exhaustion of tribal remedies is dispositive of this action in its present posture.

■ It is well settled that the question of whether an Indian tribe retains the sovereign power to compel a non-Indian property owner to submit to the civil jurisdiction of the tribe gives rise to a federal question. The issue here is whether, in these circumstances, this court must defer exercising jurisdiction until such time as the Tribes' administrative and judicial forums have been exhausted.

In *Burlington Northern Railroad Co. v. Crow Tribal Council*, 940 F.2d 1239 (9th Cir.1991), the Ninth Circuit Court of Appeals stated:

The Supreme Court has mandated the exhaustion of tribal remedies as a prerequisite to a federal court's exercise of its jurisdiction: "[E]xhaustion *is required* before such a claim may be entertained by a federal court." *National Farmers Union*, 471 U.S. at 857, 105 S.Ct. at 2454. In *Iowa Mutual Ins. v. LaPlante*, the Supreme Court said that "federal policy ... directs a federal court to stay its hand," and "proper respect ... requires" tribal remedy exhaustion. 480 U.S. at 16, 107 S.Ct. at 976. Therefore, non-Indian petitioners "*must* exhaust available tribal remedies." *Id.* The *LaPlante* Court empha-

sized that "*National Farmers Union requires* that the issue of jurisdiction be resolved by the Tribal courts in the first instance." *Id.*

*BN v. Crow Tribe*, 940 F.2d at 1245 (emphasis in original).

■ However, before deferring to a tribal forum, "a federal court must examine the circumstances of the individual case in order to determine if deference is necessary, in light of the purposes of the exhaustion requirement." *Stock West Corp. v. Taylor*, 942 F.2d 655. (9th Cir.1991). These purposes, as set forth in *National Farmers Union Insurance Company v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), and *Iowa Mutual Insurance Company v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987), include the development of tribal self-government, practical considerations of judicial efficiency, and the benefits of tribal expertise and explanations.

### Federal Law and Ongoing Proceedings

Plaintiffs initially argue that exhaustion is not applicable in this case because the asserted claims only raise issues of federal law and because there is no ongoing tribal proceeding involved. Exhaustion, however, cannot be avoided for either of these reasons.

■ Any dispute concerning the extent of tribal sovereignty and authority will involve questions of federal law. The Supreme Court recognized this fact in *National Farmers Union* when it stated that the determination of "the existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which the sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions." *National Farmers Union*, 471 U.S. at 855–856, 105 S.Ct. at 2453. Even though these sovereignty issues involve federal law, the Court decided that such an examination "should be conducted in the first instance in the Tribal Court itself." *Id.* Therefore, the fact that the jurisdictional question falls under federal law and raises constitutional con-

cerns does not defeat the exhaustion requirement.

■ Furthermore, the lack of an ongoing proceeding in a tribal forum does not negate the exhaustion requirement. In *Crawford v. Genuine Parts Co., Inc.*, 947 F.2d 1405 (9th Cir.1991), it was held that "[w]hether proceedings are actually pending in the appropriate tribal court is irrelevant." *Id.* at 1407.

The court recognizes that in *Burlington Northern v. Blackfeet Tribe*, 924 F.2d 899 (9th Cir.1991), the Circuit Court did not require exhaustion because the case presented issues of federal law and no proceeding was pending in tribal court. However, this particular holding has been called an anomaly by the Circuit Court itself in a subsequent case. *Stock West*, 942 F.2d at 633, note 7. Additionally, the clear statement in *Crawford* concerning pending proceedings raises serious questions concerning the validity of *BN v. Blackfeet Tribe* on the exhaustion issue. Therefore, in light of the Circuit Court's clear pronouncement on this issue in *Crawford*, the court finds that the lack of a tribal proceeding does not negate the exhaustion requirement.

Similarly, Plaintiffs rely on the holding of *Stock West* to support their contention that the lack of an ongoing tribal proceeding nullifies the exhaustion requirement. Plaintiffs' reliance on this case, however, is misplaced. The court in *Stock West* held that when an issue in dispute is a "reservation affair" or arises on the reservation, "the federal court has no option but to defer." *Stock West*, 942 F.2d at 661. In reaching its conclusion that the dispute in *Stock West* was not a "reservation affair," the court pointed to the lack of an ongoing tribal proceeding and the lack of issues related to tribal law. Therefore, the court merely viewed these facts as indicative of a non-reservation affair.

■ In this case, Plaintiffs have alleged that the subject waters and lands at issue are situated within the exterior boundaries of the Flathead Indian Reservation. Additionally, Plaintiffs are suing Tribal officials and seek to invalidate a Tribal ordinance. Unquestionably, this case is a "reservation affair" which triggers the mandatory exhaustion requirement. *Stock West*, 942 F.2d at 661; *Crawford*, 947 F.2d at 1408.

*Policy Imperatives*

Even if the dispute here constitutes a "reservation affair," Plaintiffs contend that exhaustion should not be required because none of the purposes for exhaustion set forth in *National Farmers Union* would be advanced in this case. Plaintiffs' contention, however, is not supported by the law or the facts.

In *National Farmers Union*, the Court stated that the first of the three policy imperatives behind exhaustion was based on the Congressional commitment "to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the legal and factual bases for the challenge." *National Farmers Union*, 471 U.S. at 856, 105 S.Ct. at 2454. Additionally, the court stated:

> Moreover the orderly administration of justice in the federal court will be served by allowing a full record to be developed in Tribal Court before either the merits or any question concerning appropriate relief is addressed. The risks of the kind of "procedural nightmare" that has allegedly developed in this case will be minimized if the federal court stays its hand until after the Tribal court has had a full opportunity to determine its own jurisdiction and to rectify any errors it may have made. Exhaustion of tribal court remedies, moreover, will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review.

*National Farmers Union*, 471 U.S. at 856–857, 105 S.Ct. at 2454.

In *BN v. Crow Tribe*, which is controlling in this case, the Circuit Court addressed the *National Farmers Union* imperatives in the context of a case strikingly similar to the one at bar. In *BN v. Crow Tribe*, the plaintiffs filed suit in federal court seeking a declaratory judgment against tribal officials to invali-

date a tribal civil regulatory ordinance as exceeding the Tribes' jurisdiction. In determining that the imperative of tribal self-government would be advanced by exhaustion, the court stated:

> The policy of tribal self-government and self-determination goes to the heart of this case. Through the challenged ordinance, the Tribe reasserts its commitment to sovereign authority over Reservation affairs. The ordinance establishes governmental mechanisms for exercise of that authority. Moreover, the ordinance identifies railroad services as vital to the Tribe's economic development.

*BN v. Crow Tribe*, 940 F.2d at 1245.

In this case, the Confederated Tribes have asserted their commitment to sovereign authority over Reservation affairs through Ordinance 87A which establishes governmental mechanisms for the protection of aquatic habitat on the Reservation. As in *BN v. Crow Tribe*, the challenged ordinance seems to be important to the well-being of the Tribes and their members for both health and economic reasons.

The policy imperatives concerning judicial efficiency and tribal expertise would also be advanced in this case through exhaustion. As in *BN v. Crow Tribe*, the Tribes are "in the best position to develop the necessary factual record for disposition on the merits. Without that tribal record the federal district court ... [faces] an action based on an uninterpreted tribal ordinance and an obscure factual background." *BN v. Crow Tribe*, 940 F.2d at 1246. Furthermore, exhaustion will provide the benefits of tribal explanations and expertise to the court in the event of further judicial review. *Id.*

Plaintiffs raise two arguments regarding the purposes of exhaustion which must be addressed. First, Plaintiffs maintain that this case involves only issues of federal law and that no tribal expertise is required. This argument, however, is unavailing for two reasons. First, though Plaintiffs contend that they are susceptible to Tribal regulatory authority, the initial question as to whether the Plaintiffs' proposed projects are within the scope of Ordinance 87A has not been answered. Certainly, the Shoreline Protection Office is best suited to make this determination in the first instance. Second, the fact that issues of federal law are involved does not diminish the benefits of exhaustion. The growing expertise of tribal courts need not be limited solely to the interpretation of internal laws and regulations. To the contrary, the continuous exposure of tribal courts to jurisdictional questions involving issues of federal law increases the value of their explanations to subsequent reviewing courts. Though exhaustion provides benefits to later reviewing courts, it also benefits tribal courts by encouraging them "to explain to the parties the precise basis for accepting jurisdiction." *National Farmers Union*, 471 U.S. at 857, 105 S.Ct. at 2454.

The second point raised by Plaintiffs concerning the purposes of exhaustion is based on prior administrative actions taken by the Tribes pursuant to Ordinance 87A. Because the Ordinance has been in effect for several years and has already been interpreted by the Shoreline Protection Board as a grant of authority over all lands within the exterior boundaries of the Reservation regardless of ownership, Plaintiffs suggest that exhaustion is unnecessary, and that this previous interpretation distinguishes this case from *BN v. Crow Tribe*.

In *BN v. Crow Tribe*, the Circuit Court noted that the Crow Tribe had not had an occasion to interpret the ordinance in question before the suit was filed in federal court. In this case, Ordinance 87A has been interpreted previously but only by the Shoreline Protection Board. The scope of Ordinance 87A has not been previously considered by the Tribal Court. Because both administrative *and* judicial remedies must be exhausted before proceeding in federal court, Plaintiffs' argument concerning prior administrative interpretation is unavailing. *BN v. Crow Tribe*, 940 F.2d at 1247.

Based on the foregoing, the court finds that all three imperatives for exhaustion compel dismissing or staying federal proceedings in this case.

*National Farmers Union Exceptions*

■ In *National Farmers Union*, the Supreme Court enumerated three exceptions to

the tribal exhaustion doctrine. Exhaustion is not required in situations where the assertion of tribal jurisdiction (1) "is motivated by a desire to harass or is conducted in bad faith," or (2) "where the action is patently violative of express jurisdictional prohibitions," or (3) "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *National Farmers Union*, 471 U.S. at 856, note 21, 105 S.Ct. at 2454. Plaintiffs argue that the latter two exceptions are applicable in this case.

Regarding the second exception, the court notes that Plaintiffs have expanded it to include actions which are patently violative *of the Constitution or* express jurisdictional prohibitions. By improperly adding the constitutional aspect to the exception, Plaintiffs attempt to engage the court in an analysis of their constitutional claims at the exhaustion stage. However, the court will not consider the merits of Plaintiffs' case at this stage of the proceedings.

■ As to the genuine exception, Plaintiffs cannot point to any action "patently violative of jurisdictional prohibitions." As was discussed above, this dispute is unquestionably a "reservation affair" and arises on the reservation. The Supreme Court has held that "tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty. (Citations omitted) Civil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." *Iowa Mutual*, 480 U.S. at 18, 107 S.Ct. at 977. Rather than patently violative of jurisdictional prohibitions, Tribal jurisdiction over Plaintiffs in this case "presumptively" lies with the Tribes pending a full examination of tribal sovereignty. Therefore, the second exception to the exhaustion requirement does not apply in this case.

■ Plaintiffs also contend that exhaustion would be futile because of a lack of an adequate opportunity to challenge the Tribal Court's jurisdiction. Plaintiffs' arguments in this regard include allegations that the Shoreline Protection Board and the Tribal Court have prejudged the issue, that they lack independence from the Tribal Council

and the Tribal Legal Department, and that they are biased. However, arguments questioning the competency and neutrality of tribal courts have long been a mainstay in attacks on tribal jurisdiction by non-Indians and have been consistently rejected. *See, e.g. Iowa Mutual*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Therefore, the court finds that the third exception to the exhaustion requirement also does not apply in this case.

*Presence of Federal Defendants*

■ Finally, Plaintiffs argue that exhaustion of tribal remedies is impossible in this case because the Tribal Court lacks jurisdiction over the Federal Defendants. Plaintiffs contend they cannot comply with the exhaustion requirement because they cannot file the identical case in Tribal Court. Plaintiffs, however, have misconstrued the exhaustion requirement.

An order dismissing this action until the exhaustion requirement has been fulfilled is not a remand of the case to Tribal Court. This court cannot compel Plaintiffs to seek relief in Tribal Court but can only act according to the clear directives that have been given it by the United States Supreme Court and the Ninth Circuit Court of Appeals. Pursuant to those directives as enunciated in *National Farmers Union* and its progeny, Plaintiffs can proceed no further with this case in federal court until tribal remedies have been exhausted.

Compliance with the exhaustion requirement, however, does not demand the impossible of Plaintiffs as they suggest. Plaintiffs are not required to file a case in Tribal Court which includes the Federal Defendants. Plaintiffs may seek such relief in Tribal Court as is possible under the law and, once that is accomplished, may seek further relief in this court.

The issues concerning the Federal Defendants in this case are the same basic issues underlying the rest of the action and could be presented in Tribal Court without the Federal Defendants. The exhaustion doctrine re-

quires that a record be developed in tribal proceedings concerning the authority of the Tribal Council to promulgate and enforce Ordinance 87A. That issue is determinative of all of Plaintiffs' claims, including the correctness of the BIA's approval and subsequent funding of the Ordinance. Therefore, the necessary record could be developed in Tribal Court without the presence of the Federal Defendants.

## CONCLUSION

Because this case arises on the Reservation, directly implicates Tribal governmental interests, and names Tribal officials as Defendants, it is a "reservation affair." Under such circumstances, tribal remedies must be exhausted prior to the exercise of federal jurisdiction unless the assertion of tribal jurisdiction falls within one of the *National Farmers Union* exceptions. *Crawford v. Genuine Parts*, 947 F.2d at 1408. As none of the exceptions apply in this case, the court must either dismiss the case or stay the proceedings pending exhaustion of tribal remedies. *Id.* at 1407. Therefore,

IT IS HEREBY ORDERED that Defendants' motions to dismiss for failure to exhaust tribal remedies are GRANTED. The case is DISMISSED without prejudice pending exhaustion of tribal remedies.

If Plaintiffs do not inform the court within sixty days of their intent to seek Tribal remedies, the court shall enter final judgment.