BASIL COOK ENTERPRISES, INC., a New York Corporation; Basil J. Cook; and Guilford D. White, Plaintiffs,

v.

ST. REGIS MOHAWK TRIBE; Norman J. Tarbell; Lincoln White; Phillip H. Tarbell; Rudolph T. Hart; Douglas A. Smoke; and Alan R. White, Defendants.

No. 95–CV–1256.

United States District Court, N.D. New York.

Feb. 14, 1996.

Camhy, Karlinsky & Stein, L.L.P., Daniel A. Ross, Martin E. Karlinsky, New York City, for plaintiffs.

Breeze & Rhodes–Devey, P.C., Michael Rhodes–Devey, Slingerlands, NY, for defendants.

Lehtinen, O'Donnell, Vargas & Reiner, P.C., William K. Hoyt, Dexter W. Lehtinen, Samuel B. Reiner, II, Miami, FL, co-counsel for defendants.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

Plaintiffs, BASIL COOK ENTERPRISES, INC., BASIL J. COOK, and GUILFORD D. WHITE, bring this action against the defendants, ST. REGIS MOHAWK TRIBE, NORMAN J. TARBELL, LINCOLN WHITE, PHILLIP H. TARBELL, RUDOLPH T. HART, DOUGLAS A. SMOKE, and ALAN R. WHITE, to enforce or seek damages relating to a management agreement concerning the operation of a bingo hall. The plaintiffs, at this time, seek to have this court compel arbitration of the parties' dispute, and to enjoin the defendants from proceeding with further actions in the so-called St. Regis tribal court. The defendants argue that the plaintiffs must pursue their legal claims through the tribal court system. In addition, the defendants claim that the management agreement, certain provisions of which the plaintiffs seek to have this court enforce, is not a binding agreement between the parties.

Sometime in 1985, the St. Regis Mohawk tribe began operating a gambling facility, allegedly on land belonging to plaintiffs Cook and White. The plaintiffs managed the facility pursuant to a management contract. The original contract was superseded by a subsequent agreement. The subsequent management agreement contained an arbitration clause that the plaintiffs now seek to have this court enforce. The defendants argue that the management agreement was never ratified, and thus, is ineffectual.

The bingo operation has been financially successful. However, the relationship between the plaintiffs and defendants has deteriorated amid claims of financial impropriety that are not set forth in detail for the court. The culmination of the tensions between the parties came on August 29, 1995. On that date, the defendants ousted the plaintiffs from the bingo operation, by forcibly seizing the bingo hall and all its contents.[1] The actions taken by the defendants have led, inevitably, to the present action.

The defendants' primary contention is that this court should require the plaintiffs to litigate their dispute in the tribal court. Such court was established in June 1995, when the tribe adopted its first written constitution. The timing of the establishment of the court, and the fact that the court, as yet, is not functioning in the exact form set forth in the constitution leads the plaintiffs to the conclusion that they should not be required to litigate in such a forum.

The court will first consider the issue of its jurisdiction, and then, if necessary, proceed to the remaining issues presented by this matter.

## II. DISCUSSION

### A. Exhaustion Of Tribal Remedies

■ Indian tribes are unique in that they enjoy a quasi-sovereign status under the law.

Though the federal government may abrogate any aspect of Indian tribal sovereignty,[2] treaties, statutes, regulations, and decisional law provide significant protections to the rights of the tribes to self-government. The Supreme Court, for example, has considered the issue of whether the tribes' power to engage in commerce has included an immunity from taxes,[3] and whether the tribal court has jurisdiction to try and punish non-Indians for offenses committed on reservation land.[4] In addition, the threshold question raised in this matter was answered by the Supreme Court in *National Farmers Union Ins. Co. v. Crow Tribe of Indians*.[5]

■ In *National Farmers Union*, the Court held that the issue of tribal court jurisdiction, although a federal question, is a matter for the tribal court itself to determine in the first instance. 471 U.S. at 857, 105 S.Ct. at 2454. The Court determined that, in furtherance of the congressional commitment to a policy favoring "tribal self-government and self-determination," the courts should follow a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to "evaluate the factual and legal bases for the challenge." *Id.* Deferral of jurisdictional issues to the tribal court is one aspect of the doctrine of exhaustion of tribal remedies. In the civil context, courts have widely held that before resorting to state or federal courts to resolve disputes relating to Indian affairs or arising on reservations, generally, a plaintiff must exhaust the remedies available through the tribal court system. *See, generally, Bowen*, 880 F.Supp. at 123 (" 'The requirement of exhaustion of tribal remedies is not discretionary; it is mandatory.' " (citation omitted)). At the very least, this general rule recognizes that the tribes are "in the best position to develop the necessary factual record for disposition on the merits," and to "provide the

---

**1.** The contents allegedly included sums of cash, files and personal effects of the plaintiffs, all fixtures and inventory and furnishings, and the building itself.

**2.** *See Escondido Mutual Water Co. v. LaJolla Band of Mission Indians,* 466 U.S. 765, 788, n. 30, 104 S.Ct. 2105, 2118, n. 30, 80 L.Ed.2d 753 (1984).

**3.** *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973).

**4.** *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978).

**5.** 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985).

benefits of tribal explanations and expertise to the court in the event of further judicial review." *Middlemist v. Sec. of U.S. Dept. of Interior*, 824 F.Supp. 940, 945 (D.Mont.1993), *aff'd*, 19 F.3d 1318 (1994), *citing, Burlington Northern Railroad Co. v. Crow Tribal*, 940 F.2d 1239, 1246 (9th Cir.1991).

■ "At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts." *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 17, 107 S.Ct. 971, 977, 94 L.Ed.2d 10 (1987). "Until appellate review is complete, [a tribe has] not had a full opportunity to evaluate the claim and federal courts should not intervene." *Id.* In the instant case, the tribal court was established before the action precipitating the dispute, although shortly before. The constitution provides for a lower level court, an appellate court, and a peace-makers court. This court can find no statute or decision that requires a court to wait a certain prescribed time period before following the rules set forth by the Supreme Court. The court recognizes that the St. Regis tribal court is in its infancy, but that fact cannot foreclose the general rule that federal courts must abstain from the exercise of jurisdiction until the plaintiffs have sought a remedy in the tribal court system.

The plaintiffs claim that the tribal court was created for the single purpose of creating a mechanism to enable the defendants to subvert adjudication of an allegedly unlawful seizure in the federal or state courts. However, it is clear that well before the August 1995 incident the tribe engaged Indian constitutional experts and expended considerable time and resources developing their constitution. It is not for this court to question the motives of the St. Regis tribe without more than the supposition of the plaintiffs arising out of a curious juxtaposition of the timing of the establishment of the tribal court system and the search and seizure of the bingo hall.

■ Finally, the court notes that the St. Regis tribal system is not with boundless authority to act. Congress enacted the Indi-

an Civil Rights Act to ensure that non-Indians will have their basic constitutional rights protected. 25 U.S.C. § 1302. These rights include the right to due process and the right to be free from unreasonable searches and seizures.

**B. Exceptions To Exhaustion Requirement**

■ Although not expressly argued by the plaintiffs, in essence, the plaintiffs argue that they should be excused from compliance with the exhaustion requirement, because the tribal court does not exist, that it is biased, and that it is corrupt.[6] However, the court finds that, although a fledgling court system, the tribal court system of the St. Regis Indians does exist, and should be afforded the initial opportunity to determine the issues presented in this case. Moreover, claims that the tribal courts should not be permitted to consider an action on the basis of inadequate legal training, bias, futility, or other grounds seeking to avoid the exhaustion requirement consistently have been rejected. *See Bowen v. Doyle*, 880 F.Supp. 99, 127 (W.D.N.Y. 1995); *citing, A & A Concrete, Inc. v. White Mountain Apache Tribe*, 781 F.2d 1411, 1416–17 (9th Cir.), *cert. denied*, 476 U.S. 1117, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986); *Middlemist*, 824 F.Supp. at 946 (Exhaustion not required only if tribe asserts jurisdiction in bad faith, in violation of express jurisdictional prohibition, or there was an inadequate opportunity to challenge the court's jurisdiction). Based on the record before the court, the court concurs with the above-cited authorities, and rejects the plaintiffs' contention of futility.

**III. CONCLUSION**

In sum, the Court denies the plaintiffs' motion to compel arbitration and stay any further proceedings in the St. Regis tribal court, and stays this action pending the tribal court's determination of jurisdiction.

**IT IS SO ORDERED.**

---

6. Corrupt in the sense that the plaintiffs allege that the tribal court was created as a means of avoiding an honest adjudication of the tribe's unlawful actions.