**BASIL COOK ENTERPRISES, INC., a New York Corporation; Basil J. Cook; and Guilford D. White, Plaintiffs–Appellants,**

v.

**ST. REGIS MOHAWK TRIBE; Norman J. Tarbell; Philip H. Tarbell, Lincoln White; Rudolph T. Hart; Douglas A. Smoke; and Alan R. White, Defendants–Appellees.**

No. 189, Docket 96–7273.

United States Court of Appeals, Second Circuit.

Argued Sept. 27, 1996.

Decided June 27, 1997.

Martin E. Karlinsky, Camhy, Karlinsky & Stein, LLP (Kenneth A. Lapatine, Josephine Trovini, Camhy, Karlinsky & Stein, LLP, New York City, of counsel) for plaintiffs–appellants.

William K. Hoyt, Lehtinen, O'Donnell, Vargas & Reiner (Dexter W. Lehtinen, Samuel B. Reiner, II, Lehtinen, O'Donnell, Vargas & Reiner, Miami, FL; Michael Rhodes–Devey, Breeze & Rhodes–Devey, Slingerlands, NY, of counsel) for defendants–appellees.

Before: WALKER, McLAUGHLIN and JACOBS, Circuit Judges.

WALKER, Circuit Judge:

Plaintiffs, Basil Cook, Guilford White and Basil Cook Enterprises, Inc., appeal from an order of the United States District Court for the Northern District of New York (Thomas J. McAvoy, *Chief Judge*) denying their motions to enjoin proceedings before the Tribal Court of the St. Regis Mohawk Tribe (the "Tribe") and to compel arbitration in connection with a management agreement governing the operation of a gambling establishment on tribal lands. *See Basil Cook Enters., Inc. v. St. Regis Mohawk Tribe*, 914 F.Supp. 839 (N.D.N.Y. 1996). Plaintiffs further challenge the district court's decision on motion of defendants—the Tribe and several of its governing officials—to stay its hand pursuant to the doctrine of exhaustion of tribal remedies established in *National Farmers Union*

*Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). Because we find that the district court correctly held that plaintiffs must exhaust their tribal remedies before instituting a federal challenge to the jurisdiction of the Tribal Court, we affirm.

## I.  BACKGROUND

This case arises from a dispute over the management of a high stakes Bingo gaming establishment on the reservation of the St. Regis Mohawk Tribe, a federally-recognized tribe whose lands are located in Franklin County, New York, along the Canadian border. Starting in 1985, Basil Cook and Guilford White, both enrolled members of the Tribe, and a New York corporation controlled by Cook and White operated the Mohawk Bingo Palace on tribal grounds. At first, pursuant to a management agreement entered into in mid–1984, the operating entity was the St. Regis Mohawk Development Corporation in which Cook and White owned an interest. In mid–1990 that agreement was superseded by the Mohawk Bingo Palace Management Agreement (the "management agreement" or "agreement") which is at the center of this dispute.

In the management agreement, the Tribe retained Basil Cook Enterprises to operate the Bingo Palace for five years from the date the agreement received the approval of the Secretary of the United States Department of the Interior, as required by statute. In addition to terms governing the management of the casino and the distribution of proceeds, the agreement provided for resolution by arbitration of disputes arising from the agreement, for a waiver of the Tribe's sovereign immunity with respect to such disputes, and for an option vested in Basil Cook Enterprises to renew the agreement at the close of its term. The contract was conditionally approved by the Interior Department's Bureau of Indian Affairs by letter dated August 10, 1990.[1]

---

1.  The parties dispute whether the Bureau of Indian Affairs effectively approved the management agreement and thus whether the agreement is in fact binding on the Tribe. We do not reach this issue, which is unnecessary to our disposition of this case.

Plaintiffs ran the Bingo Palace until August 29, 1995. On that date, after escalating tensions between tribal officials and plaintiffs over the operation of the casino, the Tribe took control of the Bingo Palace and ousted plaintiffs from the premises. The ouster, effected with the aid of tribal police but without any semblance of judicial authorization, left tribal authorities in control of the Bingo Palace, its operating records and, according to plaintiffs, other property as well, including several thousand dollars in cash. Thereafter, the Tribe has operated the Bingo Palace.

At the time the Bingo Palace was seized, tribal officials served plaintiffs with a complaint that instituted proceedings against them in the then newly-formed Tribal Court, a creature of recent tribal constitutional reform. The tribal complaint sought monetary damages based on fraud, theft, and conversion as well as breach of fiduciary duties. Three days later, on September 1, 1995, the Tribe served the individual plaintiffs, Cook and White, with a second tribal court complaint seeking to quiet title to the Bingo Palace and its adjoining land. On September 15, 1995, plaintiffs responded in Tribal Court to both complaints by denying the allegations and challenging the tribal court's jurisdiction over the dispute.

Meanwhile, on September 1, 1995, Cook and White countered by filing suit in New York State Supreme Court against various tribal officials and employees, including tribal legal counsel. Cook and White sought, among other things, injunctive and monetary relief pursuant to 42 U.S.C. § 1983 for unconstitutional deprivation of property under color of state law and monetary relief under the state law of trespass. On September 5, 1995, defendants removed the action to the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 1446.

After an unsuccessful effort to regain access to the Bingo Palace by preliminary injunction, plaintiffs Cook and White amended their complaint in various respects: they included Basil Cook Enterprises as a plaintiff; added allegations of entitlement to substantial damages (both compensatory and punitive) against defendants under the Indian Civil Rights Act, 15 U.S.C. §§ 1301–03, the doctrine of *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and various state law torts; and requested an order compelling arbitration pursuant to 9 U.S.C. § 4.

In January 1996, plaintiffs moved to compel arbitration and to enjoin further tribal court proceedings. Defendants responded by moving to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), and for failure to exhaust tribal remedies as required by *National Farmers*. On February 14, 1996, the district court denied plaintiffs' motion to compel arbitration and stayed further proceedings in federal court pending the Tribal Court's determination of jurisdiction. *Basil Cook Enters.*, 914 F.Supp. at 842. In a pretrial order entered February 20, 1996, the district court required plaintiffs to file periodic status reports on the proceedings in tribal court. On March 8, 1996, plaintiffs appealed from the February 15, 1996, order.

On March 13, 1996, pursuant to the district court's pretrial order requiring status reports, plaintiffs informed the court that on March 4, 1996, the Tribal Court had ruled that it had jurisdiction to adjudicate the actions commenced by the Tribe. On April 1, 1996, the district court entered an order, as follows:

> In accordance with this Court's Memorandum–Decision–Order dated February 14, 1996, and, the St. Regis Mohawk Tribal Court having determined that it retains jurisdiction over the above-entitled matter, it is no longer necessary for this matter to remain pending before the district court.

*Basil Cook Enters., Inc. v. St. Regis Mohawk Tribe,* No. 95–CV–1256 (N.D.N.Y. April 1, 1996). Apparently construing the district court's order as a dismissal of their claims on the merits, plaintiffs filed an "amended and supplemental notice of appeal" on April 10, 1996.

## II. DISCUSSION

### A. *Exhaustion of Tribal Remedies.*

The district court, in halting the progress of the federal suit pending exhaustion of

tribal remedies, was following the doctrine of exhaustion of tribal remedies spelled out by the Supreme Court in *National Farmers,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985).[2] In *National Farmers,* a state school district challenged in federal court a tribal court's default judgment entered in favor of a tribal member who had been injured in a parking lot of a state school located on reservation territory. The Supreme Court held that "[t]he question whether an Indian tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under § 1331." *Id.* at 852, 105 S.Ct. at 2452. The Court reasoned that a tribal court exceeds its authority only when federal plenary power over Native American affairs has divested the tribal court of such authority, a matter that must be decided with reference to federal law. *See id.* at 852–53, 105 S.Ct. at 2451–52. However, to mitigate the intrusive and disruptive potential of this holding on tribal determinations, the Court added to its broad view of federal question jurisdiction the requirement that determinations of the reach of tribal court jurisdiction "be conducted in the first instance in the Tribal Court itself." *Id.* at 856, 105 S.Ct. at 2454. *See also Iowa Mut. Ins. Co. v. La-Plante,* 480 U.S. 9, 17–19, 107 S.Ct. 971, 977–78, 94 L.Ed.2d 10 (1987) (exhaustion required where federal jurisdiction is based on diversity of citizenship); *Strate v. A–1 Contractors,* —— U.S. ——, ——–——, 117 S.Ct. 1404, 1412–13, 137 L.Ed.2d 661 (1997) (reaffirming the exhaustion requirement).

■ Although the application of the doctrine of exhaustion of tribal remedies has not been uniform among the circuits, *see* Laurie Reynolds, *Exhaustion of Tribal Remedies: Extolling Tribal Remedies While Expanding Federal Jurisdiction,* 73 N.C. L.Rev. 1089, 1107–08 (1995), the general principle can be easily stated: parties who challenge, under federal law, the jurisdiction of a tribal court

to entertain a cause of action must first present their claim to the tribal court before seeking to defeat tribal jurisdiction in any collateral or parallel federal court proceeding. Under *National Farmers,* when an action is brought in tribal court, the initial duty of that court is to determine its own jurisdiction in light of federal law. In doing so, the tribal court must conduct "a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions." *National Farmers,* 471 U.S. at 855–56, 105 S.Ct. at 2453–54 (footnote omitted). Requiring that litigants present their jurisdictional arguments to tribal courts in the first instance promotes tribal autonomy and dignity and encourages administrative efficiency by permitting the tribal courts to develop a full record prior to potential federal court involvement. The exhaustion requirement also bolsters the legitimacy of tribal courts, encourages them to articulate fully the claims of jurisdiction, and enables later reviewing courts to take advantage of their expertise. *Id.* at 856–57, 105 S.Ct. at 2453–54.

■ There are, however, exceptions to the exhaustion requirement. Specifically, in *National Farmers,* the Court identified three narrow circumstances in which litigants may proceed directly to federal court to press their jurisdictional arguments:

[1] where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, or [2] where the action is patently violative of express jurisdictional prohibitions, or [3] where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.

471 U.S. at 856 n. 21, 105 S.Ct. at 2454 n. 21 (citation and internal quotations omitted). *See also Iowa Mut.,* 480 U.S. at 19 n. 12, 107

---

**2.** At the outset, we note the ambiguity in the district court's order of April 1, 1996, from which this appeal was taken. Under the doctrine of exhaustion of tribal remedies, the district court was permitted either to enter a stay of all proceedings or to dismiss the complaint without

prejudice. *See Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 20 n. 14, 107 S.Ct. 971, 978 n. 14, 94 L.Ed.2d 10 (1987). We think it more likely from the order's language that the district court intended the latter and we so construe the order.

S.Ct. at 978 n. 12. In the absence of one or more of these circumstances, however, exhaustion is required. *See, e.g., Reservation Tel. Coop. v. Three Affiliated Tribes of the Fort Berthold Reservation,* 76 F.3d 181, 184 (8th Cir.1996).

▪ Before the duty to exhaust is triggered, some courts have emphasized the importance of a threshold showing that the civil litigation at issue implicates tribal affairs. *See Altheimer & Gray v. Sioux Mfg. Corp.,* 983 F.2d 803, 814 (7th Cir.1993). *But see Stock West Corp. v. Taylor,* 964 F.2d 912, 919 (9th Cir.1992) (*en banc*). Although there is some basis in Supreme Court precedent for such a requirement, *see, e.g., Montana v. United States,* 450 U.S. 544, 564, 101 S.Ct. 1245, 1257–58, 67 L.Ed.2d 493 (1981); *Strate,* —— U.S. at —— – ——, 117 S.Ct. at 1412–13, we need not decide that question in this case because under any possible conception of the scope of tribal or reservation affairs, this case falls within it: (1) both of the individual plaintiffs are enrolled tribal members of the St. Regis Mohawk Tribe and were engaged in a long-term, consensual business relationship with the Tribe; (2) the corporate defendant is controlled by enrolled members and similarly was engaged in a long-term business relationship with the Tribe; (3) virtually all the events giving rise to the litigation occurred on reservation lands; and (4) the controversy involves the disposition of tribal resources, both the tribe's money and its land.

### B. *Plaintiffs' Challenge.*

▪ Plaintiffs challenge the district court's order of dismissal pending exhaustion of tribal remedies on two grounds: (1) *National Farmers* does not apply to this case because there are no tribal remedies to exhaust given that the St. Regis Mohawk Tribal Court was created in contravention of tribal law and, (2) even if *National Farmers* applies, the Tribal Court's actions fall within a specific exception to the tribal exhaustion requirement since its assertion of authority is "patently violative of express jurisdictional prohibitions." 471 U.S. at 856 n. 21, 105 S.Ct. at 2454 n. 21. Both arguments are bottomed on the same claim, namely, that the Tribal Court is a nullity

because it was established in violation of the tribal constitution. However, this contention cannot withstand scrutiny for several reasons.

▪ First, to hold that the St. Regis Mohawk Tribal Court is a nullity under the tribal constitution would require this court to construe tribal law. This we may not do. The Supreme Court has long recognized the exclusive responsibility of Native American tribes to construe their own law, *see Talton v. Mayes,* 163 U.S. 376, 385, 16 S.Ct. 986, 989–90, 41 L.Ed. 196 (1896); *see also Runs After v. United States,* 766 F.2d 347, 352 (8th Cir.1985); *R.J. Williams Co. v. Fort Belknap Hous. Auth.,* 719 F.2d 979, 983 (9th Cir. 1983), and with that responsibility comes the parallel responsibility of federal courts to abide by those constructions, *see Hinshaw v. Mahler,* 42 F.3d 1178, 1180 (9th Cir.1994). Federal courts, as a general matter, lack competence to decide matters of tribal law and for us to do so offends notions of comity underscored in *National Farmers.*

Thus, we are unable to find, as plaintiffs urge, that there are no tribal law remedies available. As long as a tribal forum is arguably in existence, as a general matter, we are bound by *National Farmers* to defer to it. In this case, the availability of a remedy at tribal law is facially apparent: judicial recourse, encompassing a trial and an appeal, is provided for in the tribal constitution and, in this instance, the Tribal Court has taken papers and issued a decision holding that it has jurisdiction. In such circumstances, plaintiff must direct their arguments to the Tribal Court in the first instance.

▪ Plaintiffs argue alternatively that the facts of this dispute place it within an exception to the exhaustion requirement, specifically, that the Tribal Court's "action is patently violative of express jurisdictional prohibitions." *National Farmers,* 471 U.S. at 857 n. 21, 105 S.Ct. at 2454 n. 21. This is so, plaintiffs contend, because the Tribal Court sitting at the time the Tribe brought suit had no constitutional mandate whatsoever.

Plaintiffs' argument here is premised on a misreading of *National Farmers.* They con-

tend that when the *National Farmers* Court speaks of "jurisdictional prohibitions" in the phrase "patently violative of express jurisdictional prohibitions" it is including jurisdictional prohibitions at *tribal* law. *See National Farmers,* 471 U.S. at 857 n. 21, 105 S.Ct. at 2454 n. 21. Thus, they argue, because the Tribal Court is acting beyond its jurisdiction under *tribal* law, we should conclude that it lacks jurisdiction under *federal* law. This reading is incorrect. Nothing in *National Farmers* suggests that federal courts should decide questions of tribal law in determining the scope of the "patently violative of express jurisdictional provisions" exception to the exhaustion requirement. Nor, more generally, can *National Farmers* be read to alter the exclusive responsibility of tribal courts to determine tribal law. Whatever potential ambiguities surround the phrase "express jurisdictional prohibitions" in *National Farmers,* it is plain to us that the only relevant "jurisdictional prohibitions" in this context are those arising under federal law where the central question is whether "federal law has divested the Tribe of [an] aspect of [its] sovereignty." 471 U.S. at 853, 105 S.Ct. at 2452. The lesson of *Talton v. Mayes*— that construction of tribal law is "solely a matter within the jurisdiction" of the tribal courts, 163 U.S. at 385, 16 S.Ct. at 989–90— can mean little else.

■ Thus, exhaustion will be excused under the "patently violative of express jurisdictional prohibitions" exception only in those rare cases when a tribal court's civil jurisdiction is found by a federal court to be in patent violation of express federal law. *See Blue Legs v. United States Bureau of Indian Affairs,* 867 F.2d 1094, 1097–98 (8th Cir.1989) (finding no exhaustion required because the tribal court's jurisdiction over a suit claiming tribal sanitation dumps were maintained in violation of federal law was foreclosed by the Resource Conservation and Recovery Act); *United States v. Yakima Tribal Court,* 806 F.2d 853, 860–61 (9th Cir.1986) (finding that exhaustion is not required because tribal suit seeking to enjoin United States' construction of a irrigation canal through land located on the Yakima Tribe's reservation was foreclosed by the sovereign immunity of the United States). *Cf. Northern States Power Co. v. Prairie Island Mdewakanton Sioux Indian Community,* 991 F.2d 458, 462–63 (8th Cir. 1993) (tribal ordinance requiring transporters of nuclear material to obtain a tribal license is preempted by the Hazardous Material Transportation Act).

Although some courts have left the impression that this exception's reference to "jurisdictional prohibitions" includes tribal law, *see, e.g., Texaco, Inc. v. Zah,* 5 F.3d 1374, 1377 (10th Cir.1993); *DeMent v. Oglala Sioux Tribal Court,* 874 F.2d 510, 516–17 (8th Cir.1989), none has discussed at length its rationale nor attempted to reconcile its approach with prior case law. Accordingly, to the extent that these cases can be read to include jurisdictional provisions of tribal law within the reach of the exception, we decline to follow them.

In the final analysis, plaintiffs ground their challenge—whether characterized as the total absence of a tribal remedy or as tribal court action in "patent[ ] violati[on] of express jurisdictional prohibitions"—on a claim that the Tribal Court lacked all authority to hear this dispute because the appointment of the presiding tribal judge was executed in violation of the tribal constitution. Specifically, plaintiffs contend that the appointment, by the Tribal Council (the tribe's legislative branch), of the first judge to sit on the Tribal Court was constitutionally flawed in two ways: (1) the office could only be filled, at least for the first time, by election not appointment, *see* Constitution of the St. Regis Mohawk Tribe, art. V, § 8, and (2) the person appointed, Christine Deom, a Canadian lawyer, did not meet the constitution's express requirement that tribal court judges be "validly enrolled members on the American Side of the Mohawk Reservation," *id.,* art. V, § 10.

A brief glance at the Tribe's constitution adopted by tribal referendum in June of 1995, capping a two year governmental reform initiative, reveals that these issues present difficult questions of interpretation, implicating several constitutional provisions. For example, although the constitution provided that the offices of the Tribe's three branches—Chief, Tribal Council, and Judicia-

ry—were to be filled by election in June of 1996, *see id.*, art. V, § 6, and that, in the interim, the non-judicial branches were to be filled by the existing Chief and Tribal Council members, *see id.*, art. V, § 8, the constitution was silent on how (or whether) the judicial offices were to be filled pending election.[3] In light of the professed need for a fully-functioning government in the interval between the adoption of the constitution and the Tribe's first elections, *see* Joint Appendix at 196–97 (affidavit of Henry Flood, the Tribe's constitutional expert), this ambiguity required judicial resolution.

Similarly, with respect to qualifications for office, although there is a general provision that tribal offices are to be filled by tribal members of "the American side of the Mohawk Reservation," *id.*, art. V, § 10, there is also a specific provision applicable to the judicial branch alone that makes no mention of tribal membership as a prerequisite for appointment or election: "Judges shall be at least twenty five (25) years old, of good moral character and not have been convicted of a felony within the past ten (10) years" and then specifying a list of four professional criteria, *id.*, art. X, § 5. Although Judge Deom does not satisfy the constitution's general requirement, because she is a Canadian, she fully satisfies the requirements specifically applicable to the judicial branch. Given the axiom of construction that a provision that is general is controlled by one that is more specific, *see, e.g., Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992), as well as the obvious need to ensure a pool of qualified personnel to fill judicial posts, *see* Joint Appendix at 199 (affidavit of Henry Flood) (noting that in drafting the judicial qualification provision "it was deemed necessary to encompass a broad group of candidates so that the field from which judges would be chosen would not be limited to those few members of the American side of the Mohawk Tribe who might have sufficient professional qualifications"), resolution of this constitutional matter is far from certain.

Plaintiffs invite us to enter this interpretative thicket. We decline to do so. These constitutional questions are, for good reason, matters of tribal law reserved to the tribal judiciary to resolve. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55–56, 98 S.Ct. 1670, 1675–76, 56 L.Ed.2d 106 (1978) (Native American tribes have the authority to craft their own substantive law governing internal matters and to enforce that law in their own fora); *Talton*, 163 U.S. at 385, 16 S.Ct. at 989–90 (tribal courts' interpretations are binding on federal courts).

■ As a final matter, at oral argument (although not in their briefs), plaintiffs argue that to the extent they were required to exhaust tribal remedies, they have already done so at the time of oral argument in this matter. They based this claim of the fact that on March 5, 1996, the Tribal Court reached a determination that plaintiffs are properly within its jurisdiction. *See* Joint Appendix at 216–29 (*St. Regis Mohawk Tribe v. Basil Cook Enters.*, Case Nos. 95–001, 95–002 (Memorandum–Decision and Order of St. Regis Mohawk Tribal Court, March 5, 1996)). We disagree. Whether the decision by the tribal court constitutes exhaustion for the purposes of *National Farmers* depends on the procedures that exist at tribal law to challenge the ruling, *see, e.g., Iowa Mut.*, 480 U.S. at 16–17, 107 S.Ct. at 976–77, and the Tribe's conception of an appealable order. On the basis of the record before us, we cannot say that tribal process has been exhausted. *See* Constitution of the St. Regis Mohawk Tribe, art. X, § 4 (establishing a "Court of Appeals" consisting of "a Chief Judge and two Associate Justices"). Nor can we say that the Tribal Court's order is, in fact, an appealable order under tribal law. Thus, we leave until later (and to the district court in the first instance) the question of whether the tribal remedies have been exhausted and, if so, whether an assertion of Tribal Court jurisdiction in this case is in accord with federal law.

---

**3.** The constitution provided, generally, for filling vacancies in the elective governmental positions through appointment by the Tribal Council should the vacancy occur "due to death, resignation, removal from office or recall." *Id.*, art. V, § 9.

### III. CONCLUSION

For the reasons set forth, we affirm the district court's order dismissing this action without prejudice to refiling upon the exhaustion of tribal remedies.