JOHN C. DRUMM ET AL. *v.* G. MICHAEL BROWN ET AL.
(SC 15809)

Borden, Berdon, Katz, Palmer and McDonald, Js.

658

Argued January 15—officially released July 28, 1998

*John R. Williams*, for the appellants (plaintiffs).

*David S. Williams*, with whom was *Elizabeth Conway*, for the appellees (defendants).

*Opinion*

BORDEN, J. The sole issue in this appeal is whether the trial court properly dismissed the plaintiffs' action on the ground that they had failed to exhaust the remedies available in the Mashantucket Pequot Tribal Court (tribal court). The plaintiffs, John C. Drumm and Richard Perron, state police officers formerly assigned to the Foxwoods Casino (casino) on the Mashantucket Pequot Reservation (reservation), and Gerald O. Maranda, formerly an employee in the security unit at the casino, appeal from the judgment of the trial court[1] dismissing their action against the defendants, G. Michael Brown, Robert J. Carroll, George H. Henningsen, Robert T. Winter and Richard A. Hayward, all of whom are officers of the Mashantucket Pequot Tribe (tribe) or the tribe's unincorporated, wholly owned instrumentality, the Mashantucket Pequot Gaming Enterprise (gaming enterprise). Hayward is also a member of the tribe.

The plaintiffs claim that the trial court improperly dismissed their complaint because that court was obligated to exercise its jurisdiction over the complaint. The defendants claim that the trial court properly dismissed the complaint under the federal doctrine of exhaustion of tribal remedies. We conclude that under the particular facts of this case, at this stage of the proceedings the action should be stayed as to Drumm and Perron, and the action of Maranda should proceed in the trial court. Accordingly, we reverse the judgment of the trial court.

[1] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023, now Practice Book (1998 Rev.) § 65-1, and General Statutes § 51-199 (c).

In September, 1996, the plaintiffs filed a three count complaint against the defendants[2] in the Superior Court for the judicial district of Middlesex. According to the allegations of the complaint, actions taken by the defendants in response to the plaintiffs' participation in an investigation into possible criminal activities at the casino harmed the plaintiffs in various ways. Specifically, the plaintiffs alleged that "the defendants maliciously conspired and acted together . . . [in] suspend[ing] . . . Maranda from his position [as a security administrator at the casino] on December 12, 1995, and caus[ing] him to be discharged on December 26, 1995 . . . [and in] releas[ing] to the news media a false allegation that . . . Perron had committed a criminal act in the course of his duties . . . ." In addition, the complaint alleged that the defendants "exercised their political influence with the Governor of Connecticut to cause him to pressure the Commissioner of Public Safety to limit the role of the State Police in investigating crime at [the casino] . . . ." According to the complaint, "[t]he actions of the defendants were malicious, extreme and outrageous and were carried out with the intention of causing the plaintiffs to suffer emotional distress and of thereby intimidating law enforcement officials in the State of Connecticut . . . ." Finally, the complaint alleged that "[a]s a direct and proximate result of the actions of the defendants . . . Drumm and Perron were involuntarily removed from their State Police assignments [at the casino] and transferred to other duties . . . Maranda has been unemployed since

---

[2] The defendants and their positions at the time of the events described in the plaintiffs' complaint are: G. Michael Brown, president and chief executive officer of the casino; Robert J. Carroll, legal consultant to the gaming enterprise, through which the tribe conducts all gaming operations; George H. Henningsen, senior vice president of operations at the casino; Robert T. Winter, general counsel to the gaming enterprise; and Richard A. Hayward, a member of the tribe and the chairman of the Mashantucket Pequot Tribal Council.

the end of December, 1995, and has suffered and in the future will suffer great economic loss; all plaintiffs have been held up to public scorn, derision and ridicule; and all plaintiffs have suffered extreme emotional distress." Although the precise causes of action asserted are not clear—and we render no opinion as to whether the plaintiffs' pleadings are sufficient in any respect—the complaint appears to attempt to make claims, on behalf of all the plaintiffs, based on infliction of emotional distress, libel and defamation, and malicious prosecution; on behalf of Drumm and Perron, based on interference with contractual relations; and on behalf of Maranda, based on wrongful discharge.

The complaint, which is drafted in general terms, gives very little detail regarding the facts underlying its allegations. A report of the state's attorney for the judicial district of New London concerning the underlying incident, which the defendants submitted to the trial court, without objection, at the hearing on the motion to dismiss, illuminates the factual background, however.[3] The trial court rendered its judgment on the

[3] The report of the state's attorney provides: "On December 11, 1995, Richard A. Hayward, [c]hairman of the [tribe], wrote to the Governor of the State of Connecticut that an investigation by the management of [the casino] indicated that a member of the Connecticut State Police had 'been involved in two illegal break-ins' involving Mashantucket Pequot Tribal property. The property consists of an office located on Route 184 in North Stonington and a trailer used to store financial records on the [r]eservation. Governor John G. Rowland instructed Commissioner of Public Safety Kenneth H. Kirschner to investigate the matter and asked Chief State's Attorney John M. Bailey to assist in resolving the issue. The Commissioner assigned the criminal investigation to the Eastern District Major Crime Squad which is entirely separate from the State Police Casino Unit and which reports to a separate commander. It is the responsibility of the State's Attorney of the Judicial District of New London to determine whether or not there is evidence that violations of criminal laws have occurred and, if so, whether criminal charges should be brought. The criminal investigation conducted by the Major Crime Squad was detailed and thorough. The evidence does not indicate that any criminal laws were violated.

"The essential facts as developed not only by the Major Crime Squad but also by the management of [the casino], which interviewed and took statements from numerous witnesses, are straightforward.

basis of the general allegations of the complaint and

"A member of the [tribe] served as [d]irector of [s]ecurity for [the casino]. In such capacity he directed and supervised a staff of approximately 570 people providing security for the casino as well as properties owned by the casino and the [t]ribe on and off the [r]eservation. During a period before November 12, 1995, the [s]ecurity staff had been receiving information from an employee of the finance office that the employee suspected that there were certain irregularities in payments, that documents had been altered or shredded, and that the [t]ribe may have paid twice for the same goods or services. The employee gave security officers copies of records. The employee did not want others to learn of these concerns or of the fact that [s]ecurity had been made aware of them. The information was ambiguous and the [d]irector wanted to gather more information to confirm or dispel the employee's suspicions before informing anyone in management. He did, however, inform members of the State Police Casino Unit and asked for assistance in interpreting the information. There were several meetings between security officers and the employee. On November 8, 1995, security officers and two detectives met with the employee at the home of the [a]ssistant [s]ecurity [d]irector. The employee explained the basis for suspecting that double payments were being made to certain vendors. On November 10, one of the detectives suggested to the [d]irector that cancelled checks be examined.

"Subsequently, the [d]irector authorized a security officer to enter the financial office [located on Route 184 in North Stonington] on the afternoon of Sunday, November 12, 1995, when financial personnel would not be present, in an attempt to locate and examine cancelled checks. He instructed the security officer to have a casino locksmith assist in entering the office. Having locksmiths enter locked rooms appears to have been a somewhat routine occurrence on the reservation, as locksmiths are required to complete forms indicating the date and time of entry, the person requesting entry and the reason for the request.

"The [s]ecurity officer decided that in order to keep the investigation from becoming commonly known, he would report that the reason for the entry was to investigate a suspicious odor. The security officer requested that a detective assigned to the State Police Casino Unit accompany him to help look for and identify any checks or records that might be helpful. The detective correctly believed that the security officer was acting under the authority and with the approval of the [d]irector of [s]ecurity and agreed to accompany and assist the security officer. Whether or not the [d]irector had actual authority to authorize this, he certainly had apparent authority to do so. With the assistance of the casino locksmith, the two entered the finance office. Within a few minutes the two determined that cancelled checks were not stored in this room. The security officer then asked the detective to accompany him to a trailer on the reservation where he believed cancelled checks might be located. The security officer and detective obtained the assistance of two other security shift supervisors, entered the

the state's attorney's report, and we review that judgment on the same basis.

On December 6, 1996, the defendants, citing the "plaintiffs' failure to exhaust tribal remedies," moved to dismiss the complaint or, in the alternative, to stay the proceedings. On June 27, 1997, the trial court granted the defendants' motion and rendered judgment dismissing the plaintiffs' action. This appeal followed.

In the meantime, on July 31, 1997, Drumm and Perron filed a complaint in the tribal court against the tribe, the Mashantucket Pequot Tribal Council and the gaming enterprise. That complaint made claims substantially similar to those in the complaint that they had filed in the trial court.

The plaintiffs claim that the trial court improperly dismissed their complaint because that court was obligated to exercise its jurisdiction over this matter. Implicit in this claim is the assertion that the exhaustion of tribal remedies doctrine does not apply to the courts of this state. In the alternative, the plaintiffs assert that even if the exhaustion doctrine does apply, the trial court should have exercised its discretion to retain jurisdiction of this case because: (1) the failure to exhaust tribal remedies is excused by the supposed likelihood of bias in favor of the defendants on the part of the

trailer, made a brief, unsuccessful search for cancelled checks and left.

"Since there was no intent to commit a crime within the premises, the only applicable criminal statute is [s]ection 53a-108 of the General Statutes, a Class B misdemeanor. This [s]ection provides that 'A person is guilty of criminal trespass in the second degree when, knowing that he is not licensed or privileged to do so, he enters or remains in a building.' Given the express authorization and approval of the [d]irector of [s]ecurity, it cannot be proven that the security officer or the State Police detective knew that they were not licensed or privileged to enter these buildings and, therefore, criminal proceedings against either the security officer or the detective are not warranted." Although the state's attorney's report does not name the individuals involved, the complaint indicates that the plaintiffs were centrally involved in this investigation into the alleged improprieties in the tribe's finance office.

tribal court; and (2) state interests in the dispute, which consist chiefly of ensuring evenhanded enforcement of state criminal laws, outweigh those of the tribe, which are assertedly minimal because few of the parties are tribal members and, purportedly, few of the key events took place on the reservation.

The defendants argue that the trial court correctly applied the doctrine of exhaustion of tribal remedies. Specifically, they claim that: (1) the doctrine is binding on state courts; (2) pursuant to the doctrine, a nontribal court must abstain whenever a tribal remedy is arguably available to the plaintiff, even in the absence of a pending parallel proceeding in a tribal court; and (3) when the plaintiff has failed to exhaust tribal remedies, absent satisfaction of one of a narrow set of exceptions, none of which applies here, the obligation to abstain is mandatory, precluding the exercise of discretion.

We conclude that: (1) the doctrine of exhaustion of tribal remedies is binding on the courts of this state, superseding the general obligation upon our courts to exercise their jurisdiction; and (2) the trial court's dismissal of the plaintiffs' action was improper, however, because the doctrine applies only when a parallel proceeding is pending in the tribal court and, at the time of the trial court's judgment, no such proceeding was pending. We also conclude, however, that the action initiated in the tribal court by Drumm and Perron after the filing of this appeal constitutes a pending parallel tribal court proceeding that triggered the application of the doctrine, and that absent satisfaction of one of a narrow set of exceptions, under the doctrine a nontribal court must abstain when a parallel proceeding is pending before a tribal court. We conclude further that: those exceptions do not apply when both the tribal and state court proceedings have been initiated by the same party or parties; therefore, abstention is warranted with respect to the actions of Drumm and Perron; and, in

this case, the proper form of abstention is a stay of proceedings instead of dismissal. Accordingly, we reverse the judgment of the trial court and remand the case to that court with direction to stay the action as to Drumm and Perron, and to conduct further proceedings in accordance with law as to Maranda.

## I

Because the doctrine of exhaustion of tribal remedies is a matter of first impression in this jurisdiction, a review of the three United States Supreme Court cases that have generated and shaped the doctrine is in order. Those cases are: *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, 471 U.S. 845, 105 S. Ct. 2447, 85 L. Ed. 2d 818 (1985); *Iowa Mutual Ins. Co.* v. *LaPlante*, 480 U.S. 9, 107 S. Ct. 971, 94 L. Ed. 2d 10 (1987); and *Strate* v. *A-1 Contractors*, 520 U.S. 438, 117 S. Ct. 1404, 137 L. Ed. 2d 661 (1997).

## A

In *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 855–57, which was decided in 1985, the United States Supreme Court first articulated the doctrine of tribal remedies. That case arose out of a motorcycle accident on the premises of a Montana public school, situated on property owned by the state but lying within the boundary of the Crow reservation. Id., 847. A Crow Indian minor who had sustained injuries in the accident filed an action in the Crow Tribal Court against the school district, a political subdivision of the state. The minor obtained a default judgment. Id. Without attempting an appeal within the tribal judicial system, the school district and its insurer, National Farmers Union Insurance Companies, filed a complaint in the United States District Court for the District of Montana against the Crow Tribe, the Crow Tribal Council, the chairman of that council, the Crow Tribal Court, and the judges of that court. Id., 848. The complaint

alleged that the tribal court lacked jurisdiction over the nonIndian school district, and sought an injunction against any attempts by the tribal court to assert jurisdiction or to execute on the judgment. Id. The District Court concluded that the tribal court lacked jurisdiction and granted the injunction. Id., 848–49. The United States Court of Appeals for the Ninth Circuit reversed, concluding that the District Court lacked jurisdiction over the matter. Id., 849.

The Supreme Court reversed the Court of Appeals, concluding that "whether a tribal court has exceeded the lawful limits of its jurisdiction"; id., 853; is a federal question over which a federal court has jurisdiction pursuant to 28 U.S.C. § 1331. Id. The Supreme Court concluded, however, that the District Court should have abstained from considering any relief for the federal court plaintiffs "until after the Tribal Court has had a full opportunity to determine its own jurisdiction and to rectify any errors it may have made." Id., 856–57.

The Supreme Court offered three reasons for requiring "[e]xhaustion of tribal court remedies . . . ." Id., 857. First, it noted that "[o]ur cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the [tribal] forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge." Id., 856. Second, "the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed." Id. Third, "[e]xhaustion of tribal court remedies . . . will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review." Id., 857. Allowing the tribal

courts to apply their expertise to the jurisdictional question is particularly important because "the question whether a tribal court has the power to exercise civil subject-matter jurisdiction over non-Indians"; id., 855; is potentially a complex question requiring "a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions." Id., 855–56.

In *National Farmers Union Ins. Cos.*, the court articulated three exceptions to the exhaustion requirement. Id., 856 n.21. "We do not suggest that exhaustion would be required [1] where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith . . . or [2] where the action is patently violative of express jurisdictional prohibitions, or [3] where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." (Citation omitted; internal quotation marks omitted.) Id. The court indicated that none of these exceptions applied to the case before it. Id., 856–57. Finally, the court remanded the case to the District Court for a determination of whether the federal action should be dismissed or merely stayed. Id., 857.

B

In 1987, the United States Supreme Court decided a second case concerning the exhaustion doctrine, namely, *Iowa Mutual Ins. Co.* v. *LaPlante*, supra, 480 U.S. 9. That case arose out of an automobile accident within the boundary of the Blackfeet Indian Reservation in Montana. Id., 11. The accident resulted in injuries to Edward LaPlante, a member of the Blackfeet Indian Tribe, who was driving a truck owned by his employer, the Wellman Ranch Company, a Montana corporation

based on the Blackfeet Indian Reservation and owned by Blackfeet Indians residing there. Id. LaPlante and his wife filed an action in the Blackfeet Tribal Court against the ranch, its owners, Iowa Mutual Insurance Company, which was the corporation's insurer, and the agency that had conducted the insurance adjustment in regard to his accident. Id. Iowa Mutual Insurance Company and the claims adjustment agency moved to dismiss the action for lack of subject matter jurisdiction, which motion the tribal court denied. Id., 12. Although the tribal judicial system included a court of appeals, appeals to that court from rulings regarding jurisdiction were allowed only after adjudication of the merits in the tribal trial court. Id.

Instead of litigating the merits in the tribal court, however, Iowa Mutual Insurance Company filed an action in the United States District Court for the District of Montana, seeking a declaration that its insurance policy did not cover the injuries sustained by LaPlante. Id., 13. The asserted basis for federal jurisdiction was diversity of citizenship under 28 U.S.C. § 1332. Id., 12–13. The District Court concluded that it lacked jurisdiction unless and until the tribal court decided not to exercise its jurisdiction. Id., 13. Relying on the exhaustion doctrine articulated in *National Farmers Union Ins. Cos.*, the United States Court of Appeals for the Ninth Circuit affirmed the ruling. Id., 13–14.

The Supreme Court concluded that the Court of Appeals had erroneously determined that there was no jurisdiction. Id., 19–20. It clarified that "the exhaustion rule enunciated in *National Farmers Union* [*Ins. Cos.*] did not deprive the federal courts of subject-matter jurisdiction. Exhaustion is required as a matter of comity, not as a jurisdictional prerequisite." Id., 16 n.8. The court confirmed, however, that the exhaustion doctrine applied to diversity cases, such as the case before the court, as well as to cases in which jurisdiction was

based on the assertion of a federal question, as in *National Farmers Union Ins. Cos.* Id., 16. The exhaustion requirement meant that although the District Court had jurisdiction over the action, it could not exercise that jurisdiction until the tribal judicial system had completed adjudication, through the highest appellate level available in that system, regarding the issue of the tribal court's jurisdiction. Id., 19.

The court again emphasized the federal policy of promoting tribal self-government as the reason for the exhaustion requirement, stating: "We have repeatedly recognized the Federal Government's longstanding policy of encouraging tribal self-government. . . . This policy reflects the fact that Indian tribes retain attributes of sovereignty over both their members and their territory . . . to the extent that sovereignty has not been withdrawn by federal statute or treaty. . . .

"Tribal courts play a vital role in tribal self-government . . . and the Federal Government has consistently encouraged their development. Although the criminal jurisdiction of the tribal courts is subject to substantial federal limitation . . . their civil jurisdiction is not similarly restricted." (Citations omitted; internal quotation marks omitted.) Id., 14–15. The court stressed that "[t]ribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty." Id., 18.

The court noted that the federal policy concerning tribal sovereignty that had dictated the exhaustion requirement in *National Farmers Union Ins. Cos.*, which was a federal question case, applied equally when the District Court's jurisdiction was based upon diversity of citizenship. "A federal court's exercise of jurisdiction over matters relating to reservation affairs can . . . impair the authority of tribal courts, as we recognized in *National Farmers Union* [*Ins. Cos.*]. . . .

Regardless of the basis for jurisdiction, the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a full opportunity to determine its own jurisdiction. [*National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 857]. In diversity cases, as well as federal-question cases, unconditional access to the federal forum would place it in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs. . . . Adjudication of such matters by any nontribal court also infringes upon tribal lawmaking authority, because tribal courts are best qualified to interpret and apply tribal law." (Citations omitted; internal quotation marks omitted.) *Iowa Mutual Ins. Co.* v. *LaPlante*, supra, 480 U.S. 15–16.

The court rejected the petitioner's argument that alleged local bias and incompetence on the part of the tribal court justified the exercise of federal jurisdiction on the basis of diversity of citizenship because the statutory grant of diversity jurisdiction was intended to protect litigants from those risks. The court reasoned that "[t]he alleged incompetence of tribal courts is not among the exceptions to the exhaustion requirement established in *National Farmers Union* [*Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 856 n.21], and would be contrary to the congressional policy promoting the development of tribal courts. Moreover, the Indian Civil Rights Act, 25 U.S.C. § 1302, provides non-Indians with various protections against unfair treatment in the tribal courts." *Iowa Mutual Ins. Co.* v. *LaPlante*, supra, 480 U.S. 19.

The court clarified that the exhaustion requirement was not satisfied until any appellate courts within the tribal judiciary had completed review of the question of the tribal court's jurisdiction. "As *National Farmers Union* [*Ins. Cos.*] indicates, proper respect for tribal legal institutions requires that they be given a 'full

opportunity' to consider the issues before them and 'to rectify any errors.' [*National Farmers Union Ins. Cos. v. Crow Tribe of Indians,* supra, 471 U.S. 857]. The federal policy of promoting tribal self-government encompasses the development of the entire tribal court system, including appellate courts. . . . Until appellate review is complete, the Blackfeet Tribal Courts have not had a full opportunity to evaluate the claim and federal courts should not intervene." (Citation omitted.) *Iowa Mutual Ins. Co.* v. *LaPlante,* supra, 480 U.S. 16–17.

The court explained that, notwithstanding the exhaustion requirement, "the Blackfeet Tribal Courts' determination of tribal jurisdiction is ultimately subject to review. If the Tribal Appeals Court upholds the lower court's determination that the tribal courts have jurisdiction, [the] petitioner may challenge that ruling in the District Court." Id., 19. The court stressed, however, that "[u]nless a federal court determines that the Tribal Court lacked jurisdiction . . . proper deference to the tribal court system precludes relitigation of issues raised by the [petitioner's] . . . claim and resolved in the Tribal Courts." Id.

The court briefly considered whether any of the three exceptions to the exhaustion requirement that had been enumerated in *National Farmers Union Ins. Cos.* excused abstention, and then determined that the exceptions were not applicable. Id., 19 n.12. Finally, the court ordered the District Court, on remand, to "consider whether, on the facts of this case, the federal action should be stayed pending further Tribal Court proceedings or dismissed . . . ." Id., 20 n.14.

C

In 1997, the United States Supreme Court decided *Strate* v. *A-1 Contractors,* supra, 520 U.S. 438, its third and most recent case involving the exhaustion of tribal remedies doctrine. That case arose out of a collision

between a car and a truck on a section of a North Dakota state highway that crosses the Fort Berthold Indian Reservation. Id., 442. "North Dakota maintains the road under a right-of-way granted by the United States to the State's Highway Department; the right-of-way lies on land held by the United States in trust for the Three Affiliated Tribes . . . and their members." Id., 442–43. The driver of the car, Gisela Fredericks, was the widow of a member of the Three Affiliated Tribes, and her five adult children were members, but she was not a member herself. Id., 443. The driver of the truck, Lyle Stockert, was not an Indian. Id. The owner of the truck, A-1 Contractors, Stockert's employer, was neither owned by Indians nor based on the Fort Berthold Indian Reservation. Id. At the time of the accident, A-1 Contractors was under subcontract with "a corporation wholly owned by the Tribes, to do landscaping work related to the construction of a tribal community building. A-1 Contractors performed all work under the subcontract within the boundaries of the reservation." Id.

Fredericks, who was severely injured, and her children, who claimed loss of consortium, brought an action against A-1 Contractors and Stockert in the Tribal Court for the Three Affiliated Tribes of the Fort Berthold Reservation. Id. The defendants moved to dismiss the action for lack of jurisdiction, and the tribal court denied the motion. Id., 444. The defendants appealed from that ruling to the Northern Plains Intertribal Court of Appeals, which affirmed the tribal court. Id.

Having exhausted all opportunities to challenge the jurisdictional question within the tribal court system, "[b]efore Tribal Court proceedings resumed, [A-1 Contractors] commenced [an] action in the United States District Court for the District of North Dakota. Naming as defendants Fredericks, her adult children, the Tribal

Court, and Tribal Judge William Strate, [A-1 Contractors] sought a declaratory judgment that, as a matter of federal law, the Tribal Court lacked jurisdiction to adjudicate Fredericks' claims. [A-1 Contractors] also sought an injunction against further proceedings in the Tribal Court." Id.

The District Court dismissed the action concluding that the tribal court had jurisdiction over the complaint filed by Fredericks and her children. Id. It relied primarily on a reading of *National Farmers Union Ins. Cos.* and *Iowa Mutual Ins Co.* in reaching that conclusion. Id. The United States Court of Appeals for the Eighth Circuit initially affirmed, but then reversed after an en banc rehearing. Id.

The Supreme Court affirmed the judgment of the Court of Appeals. Id., 445. The court's opinion carefully reviewed *National Farmers Union Ins. Cos.* and *Iowa Mutual Ins. Co.*, concluding that the District Court and the petitioners had misconstrued those cases. Id., 448–53. The court clarified that "[b]oth decisions describe an exhaustion rule allowing tribal courts initially to respond to an invocation of their jurisdiction; neither establishes tribal-court adjudicatory authority, even over the lawsuits involved in those cases." Id., 448. The court concluded, relying on other precedent,[4] that the tribal court did not have jurisdiction over Fredericks' complaint because the defendants were neither members of the tribe nor parties to a relevant type of consensual relationship with the tribe or its members; id., 453; the accident had occurred on land that, due to the right-of-way granted to the state highway department, was effectively alienated, nonIndian land; id., 454; and the

---

[4] Specifically, the court relied on *Montana* v. *United States*, 450 U.S. 544, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981), which the court described as "the pathmarking case concerning tribal civil authority over nonmembers." *Strate* v. *A-1 Contractors*, supra, 520 U.S. 445.

tribe's political integrity, economic security, health or welfare was not at stake. Id., 459.

Moreover, the court indicated that exhaustion would not be necessary in comparable cases in the future, on the basis of the exceptions to the requirement enumerated in *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians,* supra, 471 U.S. 856 n.21. Noting that "exhaustion is not an unyielding requirement"; *Strate* v. *A-1 Contractors,* supra, 520 U.S. 449 n.7; the court quoted the language articulating those exceptions. Id. Then the court indicated that based on its ruling, in the future, "state or federal courts will be the only forums competent to adjudicate . . . disputes [such as the one before it]. . . . Therefore, when tribal-court jurisdiction over an action such as this one is challenged in federal court, the otherwise applicable exhaustion requirement . . . must give way, for it would serve no purpose other than delay. Cf. *National Farmers [Union Ins. Cos.* v. *Crow Tribe of Indians,* supra, 856 n.21] . . . ." (Citations omitted.) *Strate* v. *A-1 Contractors,* supra, 459–60 n.14.

## D

This review of the Supreme Court cases involving the exhaustion doctrine brings into relief a number of points about that doctrine. First, the doctrine is based primarily upon respect for a federal policy supporting tribal self-government and self-determination, and the related notion of comity. It is also based upon efficiency considerations, specifically, the notion that efficiency is served by having tribal courts, in the first instance, apply their expertise to the complicated question of tribal court jurisdiction, and develop a record thereon, before that issue is addressed by a nontribal court.

In addition, the doctrine is not jurisdictional; that is, it does not go to, affect, or depend directly upon, the

jurisdiction of either the tribal or the nontribal court.[5] Indeed, its application presumes that colorable claims to jurisdiction in both courts can be made.[6] Rather, when it is applicable, the doctrine requires abstention by a nontribal court in order to allow the tribal court to adjudicate, in the first instance, without interference from the nontribal court, the question of its jurisdiction. Abstention is not required, however, when one of three exceptions applies: "[1] where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith . . . or [2] where the action is patently violative of express jurisdictional prohibitions, or [3] where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." (Citation omitted; internal quotation marks omitted.) *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 856 n.21.

Certain aspects of postexhaustion procedure are also evident in light of these cases. After the tribal court

---

[5] In this regard, our decision in *Charles* v. *Charles*, 243 Conn. 255, 263–65, 701 A.2d 650 (1997), is not related to the issues presently before us. In that case, we concluded that pursuant to the Mashantucket Pequot Indian Claims Settlement Act; 25 U.S.C. §§ 1751 through 1760; Connecticut courts have jurisdiction over civil actions "between Indians or to which Indians are parties which arise in the areas of Indian country situated within [Connecticut] . . . *to the same extent that [they have] jurisdiction over other civil causes of action* . . . ." (Emphasis in original; internal quotation marks omitted.) *Charles* v. *Charles*, supra, 265. Neither *Charles* nor any other of our decisions, however, has addressed whether, and if so, under what circumstances, a state trial court must abstain from exercising jurisdiction over a case before it, in order to allow a tribal judicial system the opportunity to adjudicate the case. That is the issue presented in this appeal.

[6] For instance, if "the action is patently violative of express . . . prohibitions" upon the jurisdiction of the tribal court, the second exception to the exhaustion requirement enumerated in *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 856 n.21, would excuse abstention. Likewise, if the nontribal court clearly lacked jurisdiction, the action could be dismissed on that basis, without considering whether to abstain pursuant to the exhaustion doctrine. Without deciding the issue of the jurisdiction of the state trial court, we note that the parties have not questioned that court's jurisdiction and, in our view, the record does not suggest any clear

system, including any tribal appellate courts, has adjudicated the issue of its jurisdiction, a nontribal court can review the jurisdictional issue as a federal question. Whether the tribal court system adjudicates the merits of the dispute before the jurisdictional question can be reviewed in a nontribal court depends on the tribal court procedural rules pertaining to the relative timing of adjudication of jurisdictional and substantive questions, at both the trial and appellate levels. If, subsequent to the tribal court system's adjudication of the jurisdictional question, a nontribal court determines that the tribal court exceeded its jurisdiction, the abstaining nontribal court's obligation to abstain dissolves. The merits of the controversy then potentially can be litigated in that court; if the tribal court already has adjudicated those merits, but was subsequently determined to have exceeded its jurisdiction in doing so, the merits can be *re*litigated in the nontribal court. On the other hand, if it is determined that the tribal court did not exceed its jurisdiction, the tribal court's determinations on the merits will receive no review.

It is also apparent that in spite of the shared name, the tribal exhaustion doctrine is not identical to what has traditionally been referred to in this state as the "exhaustion" doctrine, namely, the exhaustion of administrative remedies doctrine. Under our exhaustion of administrative remedies doctrine, a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum. See, e.g., *O & G Industries, Inc.* v. *Planning & Zoning Commission*, 232 Conn. 419, 425–26, 655 A.2d 1121 (1995). In the absence of exhaustion of that remedy, the action must be dismissed. See, e.g., id., 431. In contrast, the

jurisdictional problems. Cf. *Charles* v. *Charles*, 243 Conn. 255, 263–65, 701 A.2d 650 (1997). Thus, consideration of the exhaustion issue is appropriate.

exhaustion of tribal remedies doctrine is not jurisdictional and, therefore, does not mandate dismissal. Rather, it may also be satisfied by a stay of proceedings pending completion of the relevant proceedings in the tribal court.[7] Moreover, depending upon the rules of procedure in the tribal court system, the obligation to abstain can be terminated by completion of adjudication in the tribal court on the jurisdictional issue only, without proceedings on the merits.[8]

[7] Our conclusion that abstention is not required in the absence of a parallel pending proceeding in a tribal forum, as explained in part III A of this opinion, creates another distinction between the tribal remedies exhaustion doctrine and the exhaustion of administrative remedies doctrine, which precludes adjudication in the state court irrespective of whether a proceeding is pending in the administrative forum. See, e.g., *O & G Industries, Inc.* v. *Planning & Zoning Commission*, supra, 232 Conn. 425–26.

[8] Given the significant differences between this doctrine and the traditional exhaustion doctrine, and that the effect of the doctrine is to require a nontribal court, under certain circumstances, to *abstain* from further proceedings, the doctrine is more appropriately referred to as an *abstention* rather than an *exhaustion* doctrine. Numerous courts and commentators have analogized it to various abstention doctrines, and some have even given it that name. See, e.g., B. Watson, "The Curious Case of Disappearing Federal Jurisdiction Over Federal Enforcement of Federal Law: A Vehicle for Reassessment of the Tribal Exhaustion/Abstention Doctrine," 80 Marq. L. Rev. 531, 601–606 (1997). For instance, in *Iowa Mutual Ins. Co.*, the Supreme Court itself analogized the tribal exhaustion "rule . . . to principles of abstention articulated in *Colorado River Water Conservation [District* v. *United States,* 424 U.S. 800, 813–17, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976)] . . . ." *Iowa Mutual Ins. Co.* v. *LaPlante,* supra, 480 U.S. 16 n.8. In both cases, the court noted, "strong federal policy concerns favored" deference to proceedings in another forum. Id.; see also *Colorado River Water Conservation District* v. *United States,* supra, 819 (under exceptional circumstances, federal court could abstain from exercising jurisdiction in favor of ongoing proceedings in state court; court emphasized that congressional policy embodied by underlying statute favored abstention); see also *Kaul* v. *Wahquahboshkuk,* 838 F. Sup. 515, 517 (D. Kan. 1993) (tribal remedies exhaustion rule "functions as a matter of comity in much the same way as the abstention principles enunciated in *Colorado River Water Conservation [District* v. *United States,* 813–17]").

Similarly, numerous commentators have analogized the tribal remedies exhaustion doctrine to the doctrine of federal court abstention from enjoining a pending state prosecution or declaring invalid a state statute at issue therein, articulated in *Younger* v. *Harris,* 401 U.S. 37, 43, 91 S. Ct.

Notwithstanding these settled aspects of the doctrine, *National Farmers Union Ins. Cos.*, *Iowa Mutual Ins. Co.* and *Strate* leave unclear a number of issues regarding the exhaustion doctrine.[9] Three of these issues must be clarified in order to resolve the present case: (1) whether the doctrine applies to state courts; (2) whether exhaustion is required in the absence of a pending tribal proceeding; and (3) whether the non-tribal forum has discretion to refuse to abstain on grounds other than the exceptions to the requirement enumerated in *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 856 n.21. We turn next to these questions.

## II

We first consider whether the doctrine is binding on the courts of this state. The defendants, relying on cases

746, 27 L. Ed. 2d 669 (1971), and *Samuels* v. *Mackell*, 401 U.S. 66, 73, 91 S. Ct. 764, 27 L. Ed. 2d 688 (1971). See, e.g., B. Watson, supra, 80 Marq. L. Rev. 601–606, and sources cited therein. The precise nature of the underlying concerns in the two doctrines are not the same because the set of inter-sovereign relationships at issue differ: the *Younger* abstention doctrine concerns the distinctive state-federal relationship; the tribal remedies exhaustion doctrine concerns the equally unique relationships between tribe and nation, and tribe and state. Nevertheless, to the extent that both doctrines generally concern when a court of one sovereign should abstain in deference to a court of another sovereign that may be able to provide the desired relief, and to the extent that both are generally based on respect for another sovereign and notions of comity, a useful analogy can be drawn between the two doctrines.

[9] The gaps and ambiguities in the doctrine, and the different positions taken by lower courts on these points, are analyzed in a number of law review articles. See, e.g., B. Watson, "The Curious Case of Disappearing Federal Jurisdiction Over Federal Enforcement of Federal Law: A Vehicle for Reassessment of the Tribal Exhaustion/Abstention Doctrine," 80 Marq. L. Rev. 531 (1997); L. Reynolds, "Exhaustion of Tribal Remedies: Extolling Tribal Sovereignty While Expanding Federal Jurisdiction," 73 N.C. L. Rev. 1089 (1995); T. Joranko, "Exhaustion of Tribal Remedies in the Lower Courts After *National Farmers Union* and *Iowa Mutual*: Toward a Consistent Treatment of Tribal Courts by the Federal Judicial System," 78 Minn. L. Rev. 259 (1993).

from other jurisdictions,[10] contend that state courts must apply the doctrine. The plaintiffs suggest, however, that the doctrine is not binding on state courts.[11] Our analysis, which is based primarily on the three United States Supreme Court exhaustion cases, persuades us that the courts of this state must apply the exhaustion of tribal remedies doctrine.

The Supreme Court cases indicate that the doctrine is based primarily upon respect for a substantive "federal policy supporting tribal self-government . . . ." *Iowa Mutual Ins. Co.* v. *LaPlante*, supra, 480 U.S. 16. In articulating and applying the doctrine, the cases repeatedly refer to that policy. See id.; see also id., 14 ("[w]e have repeatedly recognized the *Federal Government's longstanding policy of encouraging tribal self-government*" [emphasis added]); id., 17 (referring to "the *federal policy of deference to tribal courts*" [emphasis added]); id., 19 (referring to "the *congressional policy promoting the development of tribal courts*" [emphasis added]); *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 856 ("[o]ur cases have often recognized that *Congress is committed to a policy of supporting tribal self-government and self-determination*" [emphasis added]).

---

[10] Specifically, the defendants cite the following cases: *United States* v. *Plainbull*, 957 F.2d 724, 727 (9th Cir. 1992); *Basil Cook Enterprises, Inc.* v. *St. Regis Mohawk Tribe*, 914 F. Sup. 839, 841 (N.D.N.Y. 1996), aff'd, 117 F.3d 61 (2d Cir. 1997); *Bowen* v. *Doyle*, 880 F. Sup. 99, 123–24 (W.D.N.Y. 1995); *Klammer* v. *Lower Sioux Convenience Store*, 535 N.W.2d 379, 381–82 (Minn. App. 1995); see also *Matsch* v. *Prairie Island Indian Community*, 567 N.W.2d 276, 278–79 (Minn. App. 1997); *Cohen* v. *Little Six, Inc.*, 543 N.W.2d 376, 381 n.3 (Minn. App. 1996), aff'd, 561 N.W.2d 889 (Minn.), motion of respondent for sanctions denied, 522 U.S. 804, 118 S. Ct. 41, 139 L. Ed. 2d 9 (1997).

[11] Although the plaintiffs cite no cases that support their argument that the exhaustion doctrine is not applicable to state courts, our research has uncovered such cases. See, e.g., *Gavle* v. *Little Six, Inc.*, 555 N.W.2d 284, 290–92 (Minn. 1996); *Maxa* v. *Yakima Petroleum, Inc.*, 83 Wash. App. 763, 766–67, 924 P.2d 372 (1996), review denied, 131 Wash. 2d 1016, 936 P.2d 416 (1997).

The cases indicate that the policy emanates from "[n]umerous federal statutes designed to promote tribal government . . . . See, e.g., 25 U.S.C. §§ 450, 450a (Indian Self-Determination and Education Assistance Act);[12] 25 U.S.C. §§ 476–479 (Indian Reorganization Act [granting tribes right to organize themselves in order to promote their common welfare, to adopt constitutions and bylaws and to receive charters of incorporation]); 25 U.S.C. §§ 1301–1341 (Indian Civil Rights Act [making constitutional rights applicable to tribes and tribal members])." *Iowa Mutual Ins. Co.* v. *LaPlante*, supra, 480 U.S. 14 n.5. Moreover, the Supreme Court has stated repeatedly in the exhaustion cases that its decisions "have often recognized that . . . policy . . . ." *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 856; see id., 856 n.20 (citing *New Mexico* v. *Mescalero Apache Tribe*, 462 U.S. 324, 332, 103 S. Ct. 2378, 76 L. Ed. 2d 611 [1983]; *Merrion* v. *Jicarilla Apache Tribe*, 455 U.S. 130, 138–39 n.5, 102 S. Ct. 894, 71 L. Ed. 2d 21 [1982]; *White Mountain Apache Tribe* v. *Bracker*, 448 U.S. 136, 143–44 and n.10, 100 S. Ct. 2578, 65 L. Ed. 2d 665 [1980]; *Morton* v.

---

[12] Title 25 of the United Sates Code, § 450 (a) provides in relevant part: "The Congress, after careful review of the Federal Government's historical and special legal relationship with, and resulting responsibilities to, American Indian people, finds that . . .

"(2) the Indian people will never surrender their desire to control their relationships both among themselves and with non-Indian governments, organizations, and persons."

Title 25 of the United States Code, § 450a (b) provides: "The Congress declares its commitment to the maintenance of the Federal Government's unique and continuing relationship with, and responsibility to, individual Indian tribes and to the Indian people as a whole through the establishment of a meaningful Indian self-determination policy which will permit an orderly transition from the Federal domination of programs for, and services to, Indians to effective and meaningful participation by the Indian people in the planning, conduct, and administration of those programs and services. In accordance with this policy, the United States is committed to supporting and assisting Indian tribes in the development of strong and stable tribal governments, capable of administering quality programs and developing the economies of their respective communities."

*Mancari*, 417 U.S. 535, 551, 94 S. Ct. 2474, 41 L. Ed. 2d 290 [1974]; *Williams* v. *Lee*, 358 U.S. 217, 223, 79 S. Ct. 269, 3 L. Ed. 2d 251 [1959]); see also *Iowa Mutual Ins. Co.* v. *LaPlante*, supra, 14 (citing, in addition to cases cited in *National Farmers Union Ins. Cos., Three Affiliated Tribes of the Fort Berthold Reservation* v. *Wold Engineering, P.C.*, 476 U.S. 877, 890, 106 S. Ct. 2305, 90 L. Ed. 2d 881 [1986]). The law embodying this policy has been made applicable to the Mashantucket Pequot Tribe by the Mashantucket Pequot Indian Claims Settlement Act. 25 U.S.C. § 1758 (a) ("Applicability of United States laws and regulations. Notwithstanding any other provision of law, Federal recognition is extended to the [Mashantucket Pequot] Tribe. Except as otherwise provided in this subchapter, all laws and regulations of the United States of general application to Indians or Indian nations, tribes or bands of Indians which are not inconsistent with any specific provision of this subchapter shall be applicable to the Tribe.").

The Supreme Court cases do not conclusively indicate that the exhaustion rule is substantive federal law, which is binding in state courts pursuant to the supremacy clause of the federal constitution,[13] as opposed to merely a federal procedural rule that is based upon, but separate from, the substantive legal strictures embodying the federal policy of supporting tribal self-government. Nevertheless, there are strong suggestions that the rule is substantive in nature. For example, *Iowa Mutual Ins. Co.* v. *LaPlante*, supra, 480 U.S. 17, refers to a *"federal policy of deference to tribal courts"*; (emphasis added); suggesting that the deference given to such courts through the exhaustion doctrine may be

---

[13] The constitution of the United States, article six, provides in relevant part: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. . . ."

an integral, albeit interstitial and court-created, component of the law embodying the federal policy supporting tribal self-government and self-determination. The impression that the rule is inseparable from the policy is reinforced further by the court's repeated use of language suggesting that the policy *compelled* the adoption of the doctrine. See, e.g., id., 15–16 (federal policy of "[p]romotion of tribal self-government and self-determination *required*" exhaustion rule; "[r]egardless of the basis for jurisdiction, the federal policy supporting tribal self-government *directs*" abstention until tribal remedies are exhausted [emphasis added]). As the court reminded us in *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 856,[14] "[f]ederal common law as articulated in rules that are fashioned by court decisions are" federal laws, notwithstanding their common law origins. In addition, other language used by the court strongly suggests that it contemplated application of the doctrine not only to federal courts, but also to courts of the states. See *Iowa Mutual Ins. Co.* v. *LaPlante*, supra, 480 U.S. 16 (in explaining importance of allowing tribal courts to adjudicate, without interference, matters over which they properly are exercising jurisdiction, court stated that "[a]djudication of such matters by *any* nontribal court . . . infringes upon tribal law making authority" [emphasis added]).

Moreover, even if the Supreme Court intended its exhaustion holdings in *National Farmers Union Ins.*

---

[14] See also *United States* v. *Little Lake Misere Land Co.*, 412 U.S. 580, 593, 93 S. Ct. 2389, 37 L. Ed. 2d 187 (1973) ("[T]he inevitable incompleteness presented by all legislation means that interstitial federal lawmaking is a basic responsibility of the federal courts. At the very least, effective Constitutionalism requires recognition of power in the federal courts to declare, as a matter of common law or judicial legislation, rules which may be necessary to fill in interstitially or otherwise effectuate the statutory patterns enacted in the large by Congress. In other words, it must mean recognition of *federal judicial competence to declare the governing law in an area comprising issues substantially related to an established program of government operation*." [Emphasis added; internal quotation marks omitted.]).

*Cos.* and *Iowa Mutual Ins. Co.* to constitute only a federal court procedural rule based upon, but severable from, the federal policy of supporting tribal self-government and self-determination, deference to that same policy counsels that we also adopt the doctrine for the courts of this jurisdiction. The Supreme Court established the doctrine mainly in order to avoid disruption of that "federal policy supporting tribal self-government . . . [through] direct competition [by the federal courts] with the tribal courts, thereby impairing the latter's authority over reservation affairs." Id., 16. In our view, direct competition from state courts is equally likely to disrupt that federal policy. Because we owe no less deference to federal, statutory based policy than do the federal courts, we should be no more willing than they to risk disruption of this federal policy by exercising jurisdiction over cases to which the doctrine would apply. Indeed, the well recognized " 'plenary and exclusive [federal] power over Indian affairs' "; *State* v. *Spears*, 234 Conn. 78, 85, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995); which generally precludes independent exercise of state authority vis-a-vis tribal affairs,[15] deepens our duty of deference to this particular policy. We conclude, therefore, that the doctrine is binding on the courts of this state.

### III

We next consider whether exhaustion is required in the absence of a pending parallel tribal proceeding. The

---

[15] See *Williams* v. *Lee,* supra, 358 U.S. 219–21; *Worcester* v. *Georgia,* 31 U.S. (6 Pet.) 515, 557, 8 L. Ed. 483 (1832) ("[t]he treaties and laws of the United States contemplate the Indian territory as completely separated from that of the states; and provide that *all intercourse with them shall be carried on exclusively by the government of the Union"* [emphasis added]); *Charles* v. *Charles,* 243 Conn. 255, 258, 701 A.2d 650 (1997) (in order to determine "whether the defendant, a [Mashantucket Pequot] tribal member residing on the reservation, is subject to the jurisdiction of the Superior Court of the state of Connecticut . . . we must construe those *federal statutes that*

defendants, relying on cases from other jurisdictions, contend that exhaustion is mandatory even if no action is pending in the tribal court.[16] Although the plaintiffs do not contest this point, our own research has uncovered cases decided by other courts concluding that, in the absence of a pending tribal court proceeding, abstention is not required.[17] We conclude that exhaustion is not required in the absence of a pending action in the tribal court.

### A

We note that, in both cases in which the Supreme Court has held that exhaustion was necessary, namely *National Farmers Union Ins. Cos.* and *Iowa Mutual Ins. Co.*, a proceeding was already pending in the tribal court. Moreover, the cases contain no dicta stating that the rule applies in the absence of a pending tribal court proceeding.

On the contrary, language contained in each of the Supreme Court exhaustion cases indicates that the court contemplated application of the requirement only when a parallel proceeding was pending in the tribal court. For instance, in *National Farmers Union Ins. Cos.*, the court stated that the "policy of supporting tribal self-government and self-determination . . . favors *a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge.*"

---

*govern state jurisdiction over Indian country generally and the territory of the Mashantucket Pequot Tribe in particular"* [emphasis added; internal quotation marks omitted]).

[16] The defendants cite the following cases: *Texaco, Inc.* v. *Zah,* 5 F.3d 1374, 1376 (10th Cir. 1993); *United States* v. *Plainbull,* 957 F.2d 724, 728 (9th Cir. 1992); *Bowen* v. *Doyle,* 880 F. Sup. 99, 123–24 (W.D.N.Y. 1995).

[17] See, e.g., *Altheimer & Gray* v. *Sioux Mfg. Corp.,* 983 F.2d 803, 814 (7th Cir.), cert. denied, 510 U.S. 1019, 114 S. Ct. 621, 126 L. Ed. 2d 585 (1993); *Ute Distribution Corp.* v. *Secretary of Interior of the United States,* 934 F. Sup. 1302, 1311–12 (D. Utah 1996); *Vance* v. *Boyd Mississippi, Inc.,* 923 F. Sup. 905, 911 (S.D. Miss. 1996).

(Emphasis added.) *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 856. This narrow language presupposes an ongoing proceeding in the tribal court. See also id., 856 n.21 ("[w]e do not suggest that exhaustion would be required . . . where the action *is* patently violative of express jurisdictional prohibitions" [citation omitted; emphasis added; internal quotation marks omitted]).

The court in *Iowa Mutual Ins. Co.* clarified that the exhaustion requirement applied generally whenever the exceptions enumerated in *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 856 n.21, do not apply to a parallel proceeding in tribal court, and not merely when the nontribal proceeding directly challenges the jurisdiction of the tribal court, which was the factual scenario in *National Farmers Union Ins. Cos.* Notwithstanding this expansion of the doctrine, however, the case does not suggest that the doctrine was intended to apply where no proceeding is pending before the tribal court. Indeed, the court's phrasing of the rule's mandate for the federal courts, namely, that "federal courts should not *intervene*" in tribal court proceedings; (emphasis added) *Iowa Mutual Ins. Co.* v. *LaPlante*, supra, 480 U.S. 17; reinforces the impression that the court contemplated application of the rule specifically where tribal court proceedings have commenced. Moreover, in *Granberry* v. *Greer*, 481 U.S. 129, 131 n.4, 107 S. Ct. 1671, 95 L. Ed. 2d 119 (1987), in analyzing the exhaustion requirement that applies to state prisoners filing federal habeas corpus petitions, the court emphasized that in *Iowa Mutual Ins. Co.* abstention had been necessary in light of the "parallel tribal court proceeding . . . ."

Furthermore, language that the court has used in articulating the rule in its most recent case involving the exhaustion doctrine, namely, *Strate*, confirms our

reading of the previous two exhaustion cases. Specifically, the court summarized its interpretation of *National Farmers Union Ins. Cos.* and *Iowa Mutual Ins. Co.*, stating: "Both decisions describe *an exhaustion rule allowing tribal courts initially to respond to an invocation of their jurisdiction* . . . ." (Emphasis added.) *Strate* v. *A-1 Contractors*, supra, 520 U.S. 448. This language explicitly articulates the beneficial effects of the rule with respect to tribal court authority in terms of continuing with adjudication of a pending case. In light of the categorical nature of this narrow phrasing of the rule, following the repeated use of narrow language in the previous two cases indicating the presupposition of pending proceedings, we conclude that under the Supreme Court's exhaustion cases, unless and until the jurisdiction of a tribal court has been invoked through the initiation of parallel proceedings in that forum, the exhaustion rule is inapplicable.

Furthermore, this understanding of the exhaustion rule is reinforced by three complementary policy considerations. First, the primary concern upon which the doctrine is based is most pressing when a parallel proceeding is pending in the tribal court. That concern is that adjudication in a nontribal forum will disrupt "the federal policy supporting tribal self-government . . . [by] impairing the [tribal court's] authority over reservation affairs." (Citation omitted; internal quotation marks omitted.) *Iowa Mutual Ins. Co.* v. *LaPlante*, supra, 480 U.S. 16. Assuming concurrent jurisdiction, where proceedings arising from the same transactions and occurrences, and involving substantially the same issues and parties, are pending in both a tribal and nontribal court, the risk that adjudication by the nontribal forum will impair the tribal court's authority is high. Such impairment would ensue, for example, if the nontribal court reaches conclusions counter to those that the tribal court has, or would have, reached. Indeed, even if there

is no conflict with rulings of the tribal court, the mere rendering and enforcement of judgments by a court of a different sovereignty while a parallel tribal proceeding is pending significantly impairs the authority of the latter. In comparison, the impact on a tribal court's authority of a nontribal court's adjudication of a matter over which the tribal court could, but has not, exercised jurisdiction is much more attenuated. Any such effect is speculative and indirect, consisting merely of a lost opportunity or a potential unrealized.[18]

Second, as we recently stated, "[c]ourts are in the business of ruling on litigants' contentions, and they generally operate under the rule essential to the efficient administration of justice, that where a court is vested with jurisdiction over the subject-matter . . . and . . . obtains jurisdiction of the person, it becomes its . . . duty to" adjudicate the case before it. (Internal quotation marks omitted.) *Ahneman* v. *Ahneman*, 243 Conn. 471, 484, 706 A.2d 960 (1998). Notwithstanding the plaintiffs' contentions to the contrary, this rule is not absolute. It may be relaxed, however, only "in an extreme, compelling situation." Id. Such a situation exists when a proceeding arising out of the same transactions and occurrences, and involving substantially the same issues and parties, is pending before a tribal court, because of the likelihood that state court adjudication will interfere with the proper authority of the tribal court over reservation affairs, in conflict with

---

[18] Cf. *Steffel* v. *Thompson*, 415 U.S. 452, 462, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974) (notwithstanding doctrine of federal court abstention from enjoining pending state prosecution or declaring invalid state statute at issue therein, articulated in *Younger* v. *Harris*, 401 U.S. 37, 43, 91 S. Ct. 746, 27 L. Ed. 2d 664 [1971], and *Samuels* v. *Mackell*, 401 U.S. 66, 73, 91 S. Ct. 764, 27 L. Ed. 2d 688 [1971], federal courts may provide declaratory relief when criminal proceedings in state court are threatened but not pending, because *"the . . . principles of equity . . . [and] comity . . . [upon which that abstention doctrine is based] have little force in the absence of a pending . . . proceeding"* [emphasis added; internal quotation marks omitted]).

the federal policy supporting tribal self-government and self-determination. Nevertheless, where the tribal court potentially has jurisdiction over a matter, but no proceeding is pending before it, the attenuated effect on the tribal court's authority of a nontribal court's adjudication of the matter is not sufficiently compelling to outweigh the general obligation upon a court to exercise its jurisdiction when it has been properly invoked.

Third, consideration of the traditional right of a plaintiff to select his forum leads to the same conclusion. Generally, in the absence of strong countervailing considerations, "[t]he plaintiff's choice of forum [notwithstanding that it] may well have been chosen . . . because it provides the plaintiff with certain procedural or substantive advantages, should be respected . . . ." (Internal quotation marks omitted.) *Picketts* v. *International Playtex, Inc.*, 215 Conn. 490, 501, 576 A.2d 518 (1990); see also *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947) ("plaintiff's choice of forum should rarely be disturbed"). Although the concerns regarding the authority of tribal courts outweigh the plaintiffs' traditional right of choice of forum when a relevant proceeding is pending in the tribal court, those concerns do not surmount "the strong presumption in favor of the plaintiff's chosen forum"; *Picketts* v. *International Playtex, Inc.*, supra, 502; when proceedings are not pending elsewhere.

### B

In the present case, nothing in the record or in the representations of the parties indicates that any relevant proceedings were pending in the tribal court at the time of the trial court's dismissal of the plaintiffs' complaint. We conclude, therefore, that that court's application of the doctrine to the case, and the judgment dismissing the action on that basis, were improper.

With respect to Maranda, the foregoing considerations end our inquiry. Therefore, with respect to Miranda, we reverse the trial court's judgment and remand the case to the trial court for further proceedings according to law.[19]

### C

Further consideration is necessary, however, with respect to Drumm and Perron, who have initiated a tribal court action during the pendency of this appeal. Ordinarily, when a factual or procedural development raises a new issue in a case on appeal, we remand the case to the relevant court for consideration of that issue in the first instance. In the present case, however, the relevant facts concerning the complaint filed in the tribal court are not in dispute, and the relevant points of law have been briefed and argued before us. We, therefore, address the applicability of the exhaustion of tribal remedies doctrine with respect to Drumm and Perron. We conclude that the pendency of their action before the tribal court renders application of the exhaustion doctrine appropriate in regard to them.

Examination of their tribal court complaint makes clear that it arises from the same transactions and occurrences as the trial court complaint. Their tribal court complaint alleges claims of malicious prosecution, defamation, libel, interference with contractual relations and infliction of emotional distress that are substantially the same claims and allegations that they

[19] The defendants assert that the only claim that Maranda legitimately could attempt to pursue is wrongful discharge, and that such a complaint could only be maintained against his former employer, the gaming enterprise, and not the individual defendants named in the state court action. Because that entity purportedly can be sued only in tribal court, due to considerations of tribal sovereign immunity, the defendants assert that the state court action with respect to Maranda should also be dismissed. This issue has not been fully briefed or argued before us, and the record gives no indication that it was raised before the trial court. We, therefore, do not consider it.

have asserted in their trial court complaint. Moreover, although the defendants in the two actions are not identical, there is a significant overlapping of interest between the defendants in the two actions. The tribal court defendants are the tribe, the tribal council and the gaming enterprise. It is undisputed that at all times relevant to the allegations, the defendants in the trial court action were Hayward, the chairman of the tribal council; Brown, the president and chief executive officer of the casino, the gaming operations of which were under the control of the gaming enterprise; Carroll, counsel to the gaming enterprise; Henningsen, the senior vice president of operations of the casino; and Winter, the general counsel of the gaming enterprise. Thus, there is a close and substantial connection between the positions of the trial court defendants and the entities that are the defendants in the tribal court action. Under these circumstances, we conclude that the tribal court proceeding is sufficiently closely related to the trial court proceeding to trigger application of the exhaustion doctrine.

Although in both *National Farmers Ins. Cos.* and *Iowa Mutual Ins. Co.* the tribal court proceedings were filed prior to the commencement of actions in the respective nontribal fora, the fact that the opposite sequence of filings took place in the present matter does not affect our conclusion that the exhaustion doctrine should be applied with respect to Drumm and Perron. At least where a state court has not yet conducted proceedings on the merits of an action, the risk that continued state court adjudication will impair tribal court authority exists in equal measure when the parallel tribal court action is filed subsequent to the state court action. The order in which the filings take place, thus, is generally immaterial to the policy concerns that animate the doctrine.[20]

---

[20] Cf. *Hicks* v. *Miranda,* 422 U.S. 332, 349, 95 S. Ct. 2281, 45 L. Ed. 2d 223 (1975) (doctrine of federal court abstention from enjoining pending state

## IV

We next address whether the doctrine permits us the discretion, in spite of the pendency of a parallel proceeding before the tribal court, to order continued adjudication of the case in the trial court, on a basis other than the exceptions enumerated in *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 856 n.21 ("[w]e do not suggest that exhaustion would be required [1] where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith . . . or [2] where the action is patently violative of express jurisdictional prohibitions, or [3] where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction" [citation omitted; internal quotation marks omitted]). The plaintiffs urge this court to order continued trial court adjudication on the basis of two discretionary factors. First, the plaintiffs claim that exhaustion should not be required because of the supposed likelihood that the tribal court will be biased in favor of the defendants. Second, they argue that the trial court should continue adjudication because the

prosecution or declaring invalid state statute at issue therein, articulated in *Younger* v. *Harris*, 401 U.S. 37, 43, 91 S. Ct. 746, 27 L. Ed. 2d 664 [1971], and *Samuels* v. *Mackell*, 401 U.S. 66, 73, 91 S. Ct. 764, 27 L. Ed. 2d 688 [1971], applies "in full force" where relevant state proceedings "are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court"); *Colorado River Water Conservation District* v. *United States*, 424 U.S. 800, 820, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976) (abstention was necessary, in spite of fact that proceedings in abstaining court, namely, federal court, were initiated before parallel state court proceedings; court relied on "the apparent absence of any proceedings in the District Court, other than the filing of the complaint, prior to the motion to dismiss").

We note that a different conclusion might be necessary where a state court action has proceeded to consideration of the merits before a relevant tribal court action has been filed. Because no proceedings on the merits took place in the trial court prior to the filing of the parallel tribal court proceeding, however, this appeal does not present the occasion to decide that question.

interests of the state in the dispute supposedly outweigh the interests of the tribe. The state interest in adjudicating the dispute is high, the plaintiffs claim, because it concerns the defendants' supposed interference with the plaintiffs' attempts to enforce the state's criminal laws. Such interference, they assert, implicates a state interest in ensuring that state criminal laws are enforced evenhandedly. In contrast, they argue, the interest of the tribal court is minimal because most of the alleged torts supposedly took place off the reservation, and because most of the defendants are not tribal members. Given this balance of interests, they claim, exhaustion should not be required.

The defendants counter that, absent satisfaction of one of the exceptions to the doctrine articulated in *National Farmers Union Ins. Cos.*, a nontribal court has no discretion to dispense with exhaustion in a case when parallel proceedings are pending before a tribal court. The defendants, again, cite cases from other jurisdictions that conclude that the duty to abstain is mandatory.[21] Although our research has uncovered cases in which courts have concluded that the exhaustion requirement can be implemented in a discretionary, case-by-case fashion, based upon the nontribal court's perception of whether the policies underlying the doctrine will be served by abstention in any given case,[22]

---

[21] The defendants cite the following cases: *Duncan Energy Co.* v. *Three Affiliated Tribes of the Fort Berthold Reservation*, 27 F.3d 1294, 1300 (8th Cir. 1994), cert. denied, 513 U.S. 1103, 115 S. Ct. 779, 130 L. Ed. 2d 673 (1995); *Crawford* v. *Genuine Parts Co.*, 947 F.2d 1405, 1407 (9th Cir. 1991), cert. denied, 502 U.S. 1096, 112 S. Ct. 1174, 117 L. Ed. 2d 419 (1992); *Burlington Northern R.R. Co.* v. *Crow Tribal Council*, 940 F.2d 1239, 1245 (9th Cir. 1991); *Prescott* v. *Little Six, Inc.*, 897 F. Sup. 1217, 1221 (D. Minn. 1995); *Bowen* v. *Doyle*, 880 F. Sup. 99, 123–24 (W.D.N.Y. 1995); see also *Reservation Telephone Cooperative* v. *Three Affiliated Tribes of Fort Berthold Reservation*, 76 F.3d 181, 184 (8th Cir. 1996).

[22] See, e.g., *Altheimer & Gray* v. *Sioux Mfg. Corp.*, 983 F.2d 803, 814 (7th Cir. 1993); *Vance* v. *Boyd Mississippi, Inc.*, 923 F. Sup. 905, 908–13 (S.D. Miss. 1996); *Granite Valley Hotel Ltd. Partnership* v. *Jackpot Junction Bingo & Casino*, 559 N.W.2d 135, 137 (Minn. App. 1997); see also *Basil*

our analysis persuades us that, in the absence of an applicable exception from *National Farmers Union Ins. Cos.*, abstention is mandatory when a parallel proceeding is pending before a tribal court.

Before analyzing the general issue of whether, absent satisfaction of an exception to the doctrine, a nontribal court has discretion to continue adjudication when parallel proceedings are pending before a tribal court, we address the plaintiffs' first claim, namely, that the alleged likelihood of bias on the part of the tribal court in favor of the parties with tribal connections should induce this court to order continued adjudication of the case before the trial court. The rejection by the Supreme Court of a virtually identical argument in *Iowa Mutual Ins. Co.* mandates our rejection of it, independent of our conclusion regarding the mandatory nature of the duty to abstain. *Iowa Mutual Ins. Co.* v. *LaPlante*, supra, 480 U.S. 18–19. The "[p]etitioner [in that case, in which federal jurisdiction was based on diversity of citizenship] . . . contend[ed] that the policies underlying the grant of diversity jurisdiction—protection against local bias and incompetence—justif[ied] the exercise of federal jurisdiction . . . ." Id. The court, however, rejected that claim, noting that "[t]he alleged incompetence of tribal courts is not among the exceptions to the exhaustion requirement established in *National Farmers Union [Ins. Cos.* v. *Crow Tribe of Indians*, 471 U.S. 856 n.21] . . . ." *Iowa Mutual Ins. Co.* v. *LaPlante*, supra, 19. In addition, the court stated, proceeding with adjudication on that ground "would be contrary to the congressional policy promoting the development of tribal courts. Moreover, the Indian Civil

*Cook Enterprises, Inc.* v. *St. Regis Mohawk Tribe*, 117 F.3d 61, 66 (2d Cir. 1997) (stating in dictum: "Before the duty to exhaust is triggered, some courts have emphasized the importance of a threshold showing that the civil litigation at issue implicates tribal affairs. . . . [T]here is some basis in Supreme Court precedent for such a requirement . . . ." [Citations omitted.]).

Rights Act, 25 U.S.C. § 1302, provides non-Indians with various protections against unfair treatment in the tribal courts." Id. On the basis of this precedent and in light of this rationale, with which we agree, we reject the claim that adjudication should continue in the trial court because of the alleged likelihood of bias in the tribal court.[23]

We next consider the general issue of whether, absent satisfaction of an exception to the doctrine, a nontribal court has discretion to continue adjudication when parallel proceedings are pending before a tribal court. The opinions of the Supreme Court involving the exhaustion doctrine, in our view, indicate that a nontribal court has no such discretion. First, in concluding that requiring exhaustion of tribal remedies was appropriate, both *National Farmers Union Ins. Cos.* and *Iowa Mutual Ins. Co.* considered those three exceptions originally articulated in *National Farmers Union Ins. Cos.* as grounds for not requiring exhaustion. See *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 856 n.21; *Iowa Mutual Ins. Co.* v. *LaPlante*, supra, 480 U.S. 19 n.12. Similarly, the exceptions were the basis of the court's conclusion in *Strate* that exhaustion would not be necessary in comparable future cases. *Strate* v. *A-1 Contractors*, supra, 520 U.S. 459–60 n.14. Second, those cases gave no indication of the existence of any other basis for dispensing with exhaustion. Third, the language used by the court indicates that the exceptions are meant to constitute the

---

[23] We note that under some circumstances, specific allegations of bias on the part of a tribal court might satisfy the first of the exceptions to the exhaustion requirement, which applies "where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith . . . ." (Citation omitted; internal quotation marks omitted.) *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 856 n.21. Because the plaintiffs have not made such allegations, however, we have no occasion to consider the issue in this appeal.

sole grounds for not requiring exhaustion when a parallel proceeding is pending in a tribal court. For instance, in rejecting the petitioner's argument in *Iowa Mutual Ins. Co.* that the alleged incompetence of the tribal court justified continued adjudication, the court reasoned that "[t]he alleged incompetence of tribal courts is not among the exceptions to the exhaustion requirement established in *National Farmers Union [Ins. Cos.* v. *Crow Tribe of Indians*, supra, 856 n.21] . . . ." *Iowa Mutual Ins. Co.* v. *LaPlante*, supra, 19. Similarly, in *Strate*, the court referred to and quoted the exceptions articulated in *National Farmers Union Ins. Cos.* in support of the proposition that "exhaustion is not an unyielding requirement . . . ." *Strate* v. *A-1 Contractors*, supra, 449 n.7. We understand this statement that exhaustion is not an absolute requirement, followed by a quotation of the language regarding the exceptions, as a statement that those exceptions constitute *the only* grounds on which a nontribal court can avoid requiring exhaustion when a parallel case is pending before a tribal court.

Our rejection of the plaintiffs' proposed discretionary balancing approach to application of the exhaustion requirement is bolstered by reference to the policy considerations that underlie the doctrine. Such a balancing approach would require the courts of this state to determine the extent of tribal interest in the pending matter, in order to compare them to the state's interests. The determination by a nontribal court of the extent of tribal interests in a dispute, however—particularly if it led to a decision to continue adjudication, with the attendant impact that would have on the tribal court's authority —is discordant with the doctrine's underlying concern for "tribal self-government and self-determination." *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 856.[24]

---

[24] Nor does the possibility that, pursuant to the doctrine, the extent of the tribe's interests ultimately may be reviewed in a nontribal forum through

## V

Having concluded that the exceptions enumerated in *National Farmers Union Ins. Cos.* constitute the only grounds for not requiring exhaustion when a parallel proceeding is pending in a tribal court, as is true in regard to the present case, we next consider whether those exceptions excuse abstention in this case. The defendants assert that none of the exceptions applies. The plaintiffs do not contest this assertion. We conclude that the exceptions are inapplicable to the present case.

We reach this conclusion, however, without addressing the specific exceptions but, rather, because in our view, consideration of any of the exceptions would be inappropriate in the present matter. The exceptions presuppose that, as was the case in the three Supreme Court cases that have involved the exhaustion doctrine, the plaintiffs in the two different actions, namely, the actions in the tribal and the nontribal fora, are different parties with mutually exclusive preferences as to which court should exercise jurisdiction over their claims. Where the state court plaintiffs are also the initiator of the action before the tribal court, however, it simply makes no sense to consider continuing adjudication of the state court action on the basis that "assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith . . . or . . . the action is patently violative of express jurisdictional prohibitions, or . . . exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." (Citation omitted; internal quotation marks omitted.) Id., 856 n.21. None of

a postexhaustion challenge to the tribal court's jurisdictional determination; see *Strate* v. *A-1 Contractors*, supra, 520 U.S. 456–59; *Montana* v. *United States*, 450 U.S. 544, 566, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981); diminish the propriety of refraining from that inquiry at this juncture. The entire point of the exhaustion doctrine is to leave that jurisdictional inquiry to the tribal court, solely, "in the first instance . . . ." *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 856.

these exceptions is consistent with the same plaintiffs' having invoked the tribal court's jurisdiction. We conclude, therefore, that under such circumstances the exceptions are simply inapplicable.

Moreover, policy considerations suggest that the parties supporting continued adjudication in the state forum should not receive the benefit of the exceptions to the abstention requirement where those same parties have initiated the parallel tribal court proceeding, which proceeding has triggered the abstention inquiry in the first place. Specifically, under these circumstances, the policy underlying our rule against allowing plaintiffs, in general, to pursue two virtually identical actions, namely, preventing our courts from becoming a means for plaintiffs to engage in unnecessary, oppressive and vexatious litigation; see, e.g. *Halpern* v. *Board of Education*, 196 Conn. 647, 652–53, 495 A.2d 264 (1985); militates in favor of abstaining without regard to any possible exceptions to that doctrine. Although that rule normally applies only when both actions lie within the same jurisdiction, the exhaustion doctrine's presumption in favor of abstention by the nontribal court when parallel proceedings are pending in the tribal court make extension of the rule to this situation appropriate.

## VI

Finally, we consider the proper form of abstention that should be utilized by the trial court on remand regarding the complaint filed by Drumm and Perron. The trial court rendered judgment dismissing the action of these two plaintiffs. Dismissal, however, is not the only means of satisfying the requirement to abstain. In *National Farmers Union Ins. Cos.* and *Iowa Mutual Ins. Co.*, the court made clear that a stay pending further tribal court proceedings, instead of dismissal, suffices. See *National Farmers Union Ins. Cos.* v. *Crow Tribe of Indians*, supra, 471 U.S. 857 (ordering trial court on

remand to determine whether stay of proceedings or dismissal was appropriate); *Iowa Mutual Ins. Co.* v. *LaPlante,* supra, 480 U.S. 20 n.14 (same). In the present case, we conclude that a stay pending further tribal court proceedings is appropriate. In the event that tribal court proceedings are terminated, or it is determined that the matter is beyond the jurisdiction of the tribal court, these plaintiffs should be free to continue pursuing their remedy in this forum, without regard to any limitations imposed by statutes of limitations, which might constitute a bar in the event the current action is dismissed.

The judgment is reversed and the case is remanded to the trial court with direction to stay the proceedings with respect to Drumm and Perron pending further proceedings concerning their action in the tribal court, and for further proceedings according to law with respect to Maranda.

In this opinion KATZ and PALMER, Js., concurred.

BERDON, J., concurring in part and dissenting in part. I agree with the majority that the trial court incorrectly dismissed the action brought by the three plaintiffs, John C. Drumm, Richard Perron and Gerald O. Maranda, on the ground that they failed to "exhaust tribal remedies." I, like Justice McDonald, disagree that this action with respect to Drumm and Perron should be stayed. They obviously filed their complaint with the tribal court only to protect themselves after the trial court wrongfully dismissed this action. Under those circumstances, fairness would dictate that if Drumm and Perron withdraw their complaint before the tribal court they be allowed to prosecute this complaint.

Accordingly, I dissent in part.

MCDONALD, J., concurring in part and dissenting in part. I agree with the majority that the trial court improperly dismissed the plaintiffs' case against the defendants, one of whom was chairman of the tribal council. I do so because our decision in *Charles* v. *Charles*, 243 Conn. 255, 701 A.2d 650 (1997), cert. denied, 523 U.S. 1136, 118 S. Ct. 1838, 140 L. Ed. 2d 1089 (1998), settled the issue of the jurisdiction of our courts over such cases in which Indians may be parties. As we pointed out in *Charles*, Congress made clear by the Mashantucket Pequot Indian Claims Settlement Act, 25 U.S.C. §§ 1751 through 1760 (1994), that its policy was to invest jurisdiction of such cases in the Connecticut courts. *Charles* v. *Charles*, supra, 264–65.

I disagree, however, that the case with respect to plaintiffs John Drumm and Richard Perron should be stayed pending the resolution of the lawsuit they were forced to bring in the tribal court after their state court case was dismissed. Drumm and Perron only brought suit in tribal court because they were left in "no-man's-land" after that dismissal. The dismissal had been urged by the defendants who were demanding that they be sued in tribal court. In these circumstances, comity would not require abstention by the state courts on grounds of interference by the state courts with a tribal court matter.

I also disagree because Drumm and Perron had no tribal court lawsuit pending when the trial court dismissed their case. The tribal court suit is not properly before us in this appeal. In this case, this court's jurisdiction is limited to reviewing questions of law decided in the trial court. See General Statutes § 52-263. The question of a stay should have been raised before the trial court and not addressed originally by this decision.

I also disagree because leaving Drumm's and Perron's lawsuit in tribal court subjects them to having their

cases heard by judges appointed and retained by the very parties they are suing. This strikes at the very first principle of any judicial system that every litigant should receive a fair and impartial hearing and that the process satisfy the parties that they have received such a hearing. However fair the proceedings in the tribal court may be in actuality, it would be difficult, if not impossible, to so satisfy the parties in these circumstances. See *Low* v. *Madison*, 135 Conn. 1, 9–10, 60 A.2d 774 (1948); see also *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 745–46, 444 A.2d 196 (1982). In this respect, the Second Circuit has stated: "No nation is under unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum. Thus, from the earliest times, authorities have recognized that the obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act." (Internal quotation marks omitted.) *Pravin Banker Associates, Ltd.* v. *Banco Popular del Peru*, 109 F.3d 850, 854 (2d Cir. 1997).

Accordingly, I respectfully concur in part and dissent in part.